Paul E. WELDIN, Jr., Appellant,

v.

STATE of Missouri, Respondent.

No. 21853.

Missouri Court of Appeals,
Southern District,
Division One.

May 29, 1998.

Amy M. Bartholow, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Asst. Atty. Gen., Jefferson City, for Respondent.

CROW, Judge.

Appellant, Paul E. Weldin, Jr., was charged with two crimes:

Count I: robbery in the first degree, § 569.020,[1] a class A felony;

Count II: robbery in the second degree, § 569.030, a class B felony.

Appellant made a bargain with the prosecutor, the terms of which were: (1) Count I would be reduced to robbery in the second degree; (2) Appellant would plead guilty to Count I, as reduced, and guilty to Count II; (3) Appellant would receive a ten-year prison sentence on each count, to run concurrently;[2] (4) a "misdemeanor passing bad check charge" would be dismissed.

Appellant pled guilty to Count I, as reduced, and guilty to Count II. Pursuant to the bargain, the plea court sentenced Appellant to concurrent terms of ten years' imprisonment.

After delivery to the Department of Corrections, Appellant filed a motion to vacate the conviction and sentences under Rule 24.035.[3] Counsel appointed to represent Appellant filed an amended motion.

The motion court denied relief after an evidentiary hearing. This appeal followed.

The sole point relied on in Appellant's brief avers the motion court erred in denying re-

---

1. References to statutes are to RSMo 1994.

2. Section 558.019.3 provided, in pertinent part, that any defendant who pled guilty to a dangerous felony as defined in § 556.061 and was committed to the Department of Corrections would "be required to serve a minimum prison term of eighty-five percent of the sentence." The definition of "dangerous felony" in § 556.061(8) included robbery in the first degree, but not robbery in the second degree. Consequently, the bargain enabled Appellant to avoid mandatory imprisonment for eighty-five percent of the sen-

tence on Count I. Additionally, the reduction of Count I from robbery in the first degree to robbery in the second degree reduced the range of punishment from a term not less than ten years and not to exceed thirty years, or life imprisonment, § 558.011.1(1), to a term not less than five years and not to exceed fifteen years, § 558.011.1(2).

3. References to Rule 24.035 are to the version in Missouri Rules of Criminal Procedure (1996).

lief in that the lawyer who represented Appellant when he pled guilty ("Plea Counsel") rendered ineffective assistance. Specifically, avers Appellant, Plea Counsel was inept in failing to file a motion to suppress "all evidence obtained pursuant to the illegal interrogation of [Appellant] by Detective Bowden while he was in custody in Fordland, Missouri, and further failed to advise [Appellant] of this issue." Appellant proclaims: "[B]ut for [Plea] Counsel's ineffectiveness [Appellant] would not have pleaded guilty, but would have proceeded to trial."

The robberies to which Appellant pled guilty occurred July 22, 1995, in Springfield. Detective David Bowden of the Springfield Police Department was assigned to investigate.

At the evidentiary hearing in the motion court, Bowden revealed that Appellant became a suspect when "an anonymous caller called our front desk and mentioned that he had probably been involved."

On July 24, 1995, Bowden talked to the sheriff of Webster County. Bowden learned from the sheriff that Jack Hall, chief of police at Fordland, Missouri, was "familiar" with Appellant. Bowden testified he asked the sheriff to inform Hall that Springfield police were trying to locate Appellant in order to "ask him some questions." Bowden avowed he told the sheriff he (Bowden) did not have probable cause to arrest Appellant.

Pursuant to Bowden's request, the sheriff phoned Hall, telling him that Springfield police were looking for Appellant "in connection with an armed robbery."

That afternoon (July 24, 1995), Hall saw Appellant walking along Main Street in Fordland. Hall testified he approached Appellant and "told him that I needed him to come with me." Hall recounted he informed Appellant that Springfield police wanted to talk to him "about an armed robbery."

Hall explained that he did not arrest Appellant. Hall did not handcuff Appellant, nor did Hall read Appellant the "Miranda rights." [4] According to Hall, Appellant could have walked away "[a]nytime he wanted to."

Hall and Appellant walked to Hall's office, a distance estimated by Hall at 150 to 200 feet. There, Hall called the Springfield Police Department, asking for Bowden. Bowden was gone.

Hall and Appellant had a conversation. Hall recalled Appellant saying he had been in the Army; they "talked about that." Hall had no information about the robberies, hence he did not question Appellant about them.

Bowden phoned Hall while Appellant was there. Bowden spoke to Appellant, but did not "Mirandize" [5] him.

According to Bowden, Appellant said he "wasn't involved in any robberies." Appellant "volunteered" that he had been in the Greene County jail "the previous weekend."

Bowden told Hall to release Appellant. Hall did.

The next day (July 25, 1995), Bowden went to the Greene County sheriff's office and learned from a "booking sheet" that Appellant had been placed in the Greene County jail July 23, 1995, after being arrested in Christian County "on a [Greene County] misdemeanor warrant." Appellant had been released later that day (July 23). A Greene County detective gave Bowden a photograph of Appellant taken when he was "booked."

Bowden used the photograph in a photographic lineup shown to persons who witnessed each robbery. A witness to each robbery identified Appellant as the culprit.

Bowden contacted the Christian County sheriff's office, as that was the county where Appellant was arrested on the Greene County warrant. Records there showed Appellant was arrested by an officer of the Missouri State Highway Patrol.

---

4. Inferably, the ritual ordained by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5. We find no listing for "Mirandize" in Webster's Third New International Dictionary of the English Language (Merriam–Webster Inc.1986). We infer this non-word, in the context used, was meant to explain that Bowden did not perform the ritual ordained by *Miranda*, footnote 4, *supra*.

Bowden contacted the arresting officer and learned that the arrest occurred when the officer found Appellant at a bridge where Appellant's automobile was "stuck." A towing company removed Appellant's automobile from the arrest site.

Bowden contacted the tow truck driver and learned he had towed Appellant's automobile to a residence in rural Webster County.

Bowden went to the residence and talked with one of the occupants. She allowed Bowden to photograph the automobile, search it, and remove its license plates. During the search, Bowden seized a knife matching the description of one used in one of the robberies.

A witness to one of the robberies identified the knife seized by Bowden as the one used by the culprit. Bowden showed the witness the photographs Bowden had taken of Appellant's automobile. The witness identified the automobile as the one used by the culprit.

Bowden presented the information he had compiled to the Greene County prosecutor's office. A warrant was issued for Appellant's arrest.

Appellant was arrested on the warrant in Douglas County July 28, 1995. Bowden questioned Appellant at the Douglas County sheriff's office. Bowden read Appellant the "Miranda warnings." Bowden then confronted Appellant with the incriminatory information. Appellant thereupon confessed to both robberies.

Appellant's hypothesis of ineffective assistance, as we grasp it, is based on this rationale: (a) Appellant was arrested July 24, 1995, by Hall in Fordland; (b) there was no probable cause for the arrest; (c) Bowden conducted a custodial interrogation of Appellant by phone while Appellant was under arrest in Hall's office; (d) as this was a custodial interrogation, Bowden should have advised Appellant of his *Miranda* rights; (e) Bowden failed to do so; (f) because of that, anything Bowden learned from Appellant was unlawfully obtained; (g) Bowden learned from Appellant that Appellant had been jailed July 23, 1995, in Greene County; (h)

all of the incriminatory information Bowden thereafter assembled, including Appellant's confession on July 28, 1995, was a direct result of Bowden learning from Appellant that he had been jailed in Greene County.

Prior to Appellant's scheduled trial, Plea Counsel filed a motion to suppress Appellant's confession to Bowden July 28, 1995. We infer from Plea Counsel's testimony in the motion court that Plea Counsel also filed a motion to suppress physical evidence.[6]

We divine from the testimony of Plea Counsel in the motion court that the motion to suppress Appellant's confession was based on the premise that it was involuntary. Plea Counsel recounted that prior to Appellant's scheduled trial, Counsel advised Appellant that he (Counsel) "thought that the State could prove that it was a voluntary confession." Consequently, explained Plea Counsel: "[M]y thought was that [Appellant] should not go to trial ... I advised him that he should, get the best deal he could."

The agreement under which Appellant pled guilty is set forth at the outset of this opinion. Plea Counsel explained to the motion court that the agreement was "contingent upon [Appellant] pleading guilty before the suppression motions were heard."

During the guilty plea proceeding, this dialogue occurred:

"THE COURT: Are you in here pleading guilty because you did make a confession to the police that you did these two robberies that are outlined in Count 1 and 2?

THE DEFENDANT: Yes, sir."

At the motion court hearing, the lawyer representing Appellant asked Plea Counsel whether he considered the evidence assembled by Bowden after Bowden's July 24, 1995, phone conversation with Appellant "to be a product of the poisonous tree."

Plea Counsel responded:

"When I began to investigate ... how to keep out that confession [of July 28, 1995], I went in it with the idea that I was going to use fruit of the poisonous tree. But I

6. The record furnished us contains neither mo-        tion.

got sidetracked on voluntariness and involuntariness.

... I had spent several hours on voluntariness and involuntariness. And so when I had discovered the answer for that, I didn't think of the fruit of the poisonous tree again.

... as far as fruit of the poisonous tree, as far as making a real legal investigation into it, I did not do that.

And as far as giving cogent advice on the confession as it related to the fruit of the poisonous tree, I did not do that, either.

... After reading your [amended] motion [to vacate] and then looking over the police narrative ... it appeared to me to be an obvious issue to have investigated legally and factually.

. . . .

What I would have done had I caught the issue, is ask ... Bowden what led him to go through the arrest record of [Appellant] for ... July 23rd, and seen ... whether Bowden's conduct in investigating [Appellant's] booking sheet for ... July 23rd for Greene County, whether he had an independent basis for doing that, or whether he relied on [Appellant's] statement to him over the telephone when [Appellant] was in custody, from Jack Hall.

. . . .

And it appears to me now ... that there seems ... a ... pretty clear trail from the statement to evidence that was seized in the automobile."

Having espied the "trail," Plea Counsel reasoned that the identification of Appellant as the culprit was based on the knife, the license plates, and the photograph of Appellant taken July 23, 1995, at the Greene County jail. Once Appellant was identified, the warrant was issued and he was arrested. Confronted by the condemnatory evidence, Appellant confessed to Bowden.

Plea Counsel acknowledged in the motion court that his failure to advise Appellant "about the fruit of the poisonous tree" was an oversight, not a strategy decision.

Appellant, testifying in the motion court, avowed he would not have pled guilty had the eyewitness identifications, the knife, the license plates, the photographs of his automobile, and his confession July 28, 1995, to Bowden been suppressed.

The motion court found Appellant chose to plead guilty because of the plea agreement, which would have been withdrawn had Appellant pursued his motions to suppress. The motion court further found that without the plea agreement, Appellant would have had to go to trial facing harsher punishment.[7] The motion court rejected Appellant's claim that Plea Counsel rendered ineffective assistance.

Our review of the motion court's judgment is limited to a determination of whether that court's findings and conclusions are clearly erroneous. Rule 24.035(k); *Wilson v. State*, 813 S.W.2d 833, 835[5] (Mo. banc 1991).

To prevail on a claim of ineffective assistance of counsel, a prisoner seeking post-conviction relief must show (1) his lawyer failed to exercise the customary skill and diligence that a reasonably competent lawyer would have exercised under similar circumstances, and (2) the prisoner was thereby prejudiced. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987).

After a guilty plea, counsel's effectiveness is relevant in a proceeding for post-conviction relief only to extent that it affected the voluntariness of the plea. *Wilkins v. State*, 802 S.W.2d 491, 497[2] (Mo. banc 1991), *cert. denied*, 502 U.S. 841, 112 S.Ct. 131, 116 L.Ed.2d 98 (1991). To obtain relief, the prisoner must demonstrate a reasonable probability that but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Archer v. State*, 931 S.W.2d 473, 476[1] (Mo.App. S.D.1996); *Hatchett v. State*, 909 S.W.2d 748, 750[5] (Mo.App. S.D.1995). The existence of allegedly inadmissible evidence against an accused is not sufficient to vacate a guilty plea which was voluntarily and understandingly made. *Smith v. State*, 937 S.W.2d 339, 342–43[4] (Mo.App. S.D.1996); *Gilliland v. State*, 882 S.W.2d 322, 325[6] (Mo.App. S.D.1994).

7. Footnote 2, *supra*.

In resolving Appellant's claim of error, we shall assume, *without deciding*, that a reasonably competent lawyer representing Appellant would have moved to suppress all evidence Bowden gathered after he talked with Appellant by phone July 24, 1995. The theory of the motion would have been that Appellant's revelation that he had been in the Greene County jail was obtained by Bowden in violation of *Miranda*,[8] hence all evidence acquired as a result of that revelation was inadmissible. *See: State v. Baskerville*, 616 S.W.2d 839, 843[4] (Mo. banc 1981). As shall become evident *infra*, we do *not* imply such a motion would have been successful.

■■■■ Had such a motion been filed and litigated, one of the issues a judge would have had to decide is whether Appellant was in custody at Hall's office when Bowden talked to him by phone. That is because *Miranda* warnings are not required prior to questioning unless the person being questioned is in custody. *State v. Norton*, 904 S.W.2d 265, 271[23] (Mo.App. W.D.1995). A person is not in custody if he is not under arrest or otherwise restrained of his liberty. *State v. Feltrop*, 803 S.W.2d 1, 13[29] (Mo. banc 1991), *cert. denied*, 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). An individual who voluntarily accompanies a law enforcement officer to a police station is not in custody. *State v. Dye*, 946 S.W.2d 783, 786[11] (Mo.App. E.D.1997); *Feltrop*, 803 S.W.2d at 13[28].

Appellant testified in the motion court that when Hall confronted him July 24, 1995, on the street in Fordland, Hall took him by the arm and told him to accompany him (Hall). Appellant avowed he did not feel he had the right to walk away.

Had Appellant testified that way on a motion to suppress, such testimony would have been evidence that Appellant was in custody when he talked to Bowden by phone in Hall's office. However, there is no assurance the judge would have found Appellant's testimony credible. Furthermore, even had the judge found it credible, there is no certainty the judge would have concluded Appellant was in custody.

As reported earlier, Hall testified he did not arrest Appellant and did not handcuff him. Appellant never testified he was handcuffed. Appellant's subjective belief that he was not free to depart would not compel a judge to find Appellant was in custody.

■■■ An arrest occurs when surrounding circumstances are such that a reasonable person would believe he or she is not free to leave; that is, when his or her person is seized by law enforcement authorities. *State v. Bigsby*, 891 S.W.2d 160, 163[8] (Mo.App. S.D.1995), citing *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 1877[1], 64 L.Ed.2d 497 (1980). Thus, in determining whether Appellant was in custody, a judge would have had to decide whether a *reasonable person* in Appellant's circumstances would have believed he or she was not free to leave. Resolution of that issue adversely to Appellant would have been fatal to a "poisonous tree" suppression motion.

■■■ Another issue a judge would have had to decide in adjudicating such a motion is whether Bowden would have learned about Appellant being placed in the Greene County jail July 23, 1995, had Appellant not disclosed that fact during the telephone conversation July 24, 1995. Had the prosecutor demonstrated that Bowden would have inevitably discovered that Appellant had been jailed and photographed July 23, 1995, in Greene County, such showing would have defeated a "poisonous tree" suppression motion. That is because the "inevitable discovery" exception to the exclusionary rule provides that illegally obtained evidence is admissible if the prosecution can prove that the evidence inevitably would have been acquired without the illegal police conduct. *State v. Mayes*, 654 S.W.2d 926, 935[12] (Mo.App. E.D.1983).

The robberies occurred in Springfield. We take judicial notice that Springfield is in Greene County. *Cf. State v. Johnson*, 461 S.W.2d 724, 725[2] (Mo.1971). An anonymous caller had informed Springfield police that Appellant "had probably been involved." It requires scant knowledge of criminal investigation procedure to infer that in investigating the robberies, Bowden would have

---

8. Footnote 4, *supra*.

undertaken to find a recent photograph of Appellant.

Bowden testified in the motion court that when he talked with Appellant by phone July 24, 1995, he (Bowden) "had just gotten into the investigation." In evaluating the likelihood of success of a "poisonous tree" suppression motion, Appellant would have had to consider whether the prosecutor could have convinced the judge that had Bowden not talked with Appellant by phone July 24, 1995, Bowden would nonetheless have contacted the Greene County sheriff's office to see whether a recent photograph of Appellant was on file there.[9] As explained earlier, a finding that Bowden would have inevitably discovered Appellant's photograph of July 23, 1995, and the "booking sheet" that accompanied it, would have foiled a "poisonous tree" suppression motion.

Appellant was never asked in the motion court whether he would have pursued a "poisonous tree" suppression motion (thereby nullifying the plea agreement), realizing that if such motion were denied, he faced more severe punishment at trial.[10] Consequently, there was no evidence to support a finding that Appellant would have pursued such a motion had Plea Counsel filed one and schooled Appellant about the issues on which the success of the motion hinged.

To award post-conviction relief, the motion court would have had to believe Appellant would have chosen to pursue a "poisonous tree" suppression motion, thereby abnegating the plea agreement. Such a choice would have been a gamble that the motion would be granted, and that (a) the prosecutor would not appeal under § 547.200, or (b) if the prosecutor did appeal, the appeal would be unsuccessful.

As reported earlier, Appellant elected in the plea court to abandon the motions to suppress filed by Plea Counsel, thereby accepting the benefit of the plea agreement. The motion court was not compelled to believe Appellant would have made a different election had Plea Counsel filed a "poisonous tree" suppression motion and apprised Appellant of its ramifications. As we have seen, Appellant told the plea court he was pleading guilty because of his confession. Appellant obviously understood he was likely to be convicted unless a motion to suppress the confession was pursued to a successful conclusion.

The motion court astutely noted there was no guarantee that a "poisonous tree" suppression motion would have been successful. That finding is not clearly erroneous.

■ It was Appellant's burden to prove his claim for relief by a preponderance of the evidence. Rule 24.035(i); *State v. Nunley*, 923 S.W.2d 911, 922[23] (Mo. banc 1996), *cert. denied,* — U.S. —, 117 S.Ct. 772, 136 L.Ed.2d 717 (1997). We hold Appellant failed to meet that burden, as there was no evidence that he would have spurned the plea agreement and pursued a "poisonous tree" suppression motion had Plea Counsel filed one and educated Appellant about the issues on which he would have to prevail to obtain a favorable ruling. Having decided that, we hold the motion court did not clearly err in denying relief.

Affirmed.

GARRISON, P.J., and PREWITT, J., concur.

---

**9.** Appellant emphasizes there was evidence that (a) once an arrest warrant is served, it is "taken out of the MULES system," and (b) misdemeanor warrants "are not entered into the NCIC nationwide computer database." Appellant argues it is thus unlikely that Bowden would have discovered Appellant's arrest on the Greene County warrant "simply by looking in the computer." However, the argument ignores the possibility that Bowden, in seeking a photograph of Appellant, would have routinely contacted the Greene County sheriff's office.

**10.** Appellant's brief states he testified that had he been "fully informed," he would not have pled guilty. That is a brazen misstatement of Appellant's testimony. As reported earlier in this opinion, Appellant testified only that he would not have pled guilty had the eyewitness identifications, the knife, the license plates, the photographs of his automobile, and his confession July 28, 1995, to Bowden been suppressed.