Richard S. PETERS, Petitioner–
Respondent,

v.

DIRECTOR OF REVENUE,
Respondent–Appellant.

No. 23593.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 23, 2001.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stacy L. Anderson, Asst. Atty. Gen., Jefferson City, MO, Attorneys for Appellant.

David S. Akers, Allman, Ingrum, Wilson & Akers, L.L.C., Branson, MO, Attorney for Respondent.

PREWITT, Judge.

The Director of Revenue appeals from a decision of the Circuit Court of Taney County, Missouri that set aside the Director's revocation of Peters' driving privilege for driving with an alcohol concentration of at least .10%. At trial, the following evidence was presented:

At approximately one o'clock in the morning on March 30, 1999, Officer Ferrell Jeter of the Hollister police department

was driving westbound on Missouri 76 highway, when he noticed an eastbound "Chevy" pickup truck travelling at what appeared to be a high rate of speed. Officer Jeter activated his radar, which confirmed that the truck was travelling at 47 miles per hour. The posted speed limit for that area was 35 miles per hour. Officer Jeter turned his patrol car around and stopped the pickup truck.

The driver of the pickup truck was Richard Peters. There were two other passengers in the vehicle. The spotlight on Officer Jeter's patrol car was directed towards the pickup truck, but other than that, the area was not well lit. Officer Jeter shone his flashlight on Peters. He noticed that Peters' eyes were watery and glassy, and that he smelled moderately of intoxicants. Officer Jeter did not notice any containers of intoxicants in the vehicle, but he asked Peters if he had been drinking. Peters admitted that he had consumed a pitcher of beer. Officer Jeter then asked Peters to step out of his pickup truck, and Peters complied.

Officer Jeter then performed the horizontal gaze nystagmus test, a field sobriety test. This test is performed by moving a stimulus, in this case, Officer Jeter's finger, in front of the subject's eyes while observing the eyes for any nystagmus, or involuntary jerking of the eye. Officer Jeter observed a nystagmus in each of Peters' eyes, giving Peters a score of five out of six points. A score of four or higher on the test indicates that the person tested is legally intoxicated. Officer Jeter also noted that Peters' eyes were not dilated, that his speech was coherent, and he was able to follow directions.

Officer Jeter did not perform any other field sobriety tests, such as the walk and turn test or the one-legged stand test, because the ground was sloped and be-

cause Peters told the officer that he had arthritis in his legs. Officer Jeter did observe Peters as he walked to the back of the police vehicle and noted that Peters' balance, walk, and turn were "fair" but "[no]t exactly sure-footed."[1]

Peters informed Officer Jeter that he did not feel that he was intoxicated, but he agreed to accompany Officer Jeter to the police department to take a breath analysis test. Peters testified that when the officer asked him to go to the station, he agreed to go because he "didn't figure [he] had much choice." He testified that he did not feel that he was free to say no and walk away. Before putting Peters in the backseat of the patrol car, Officer Jeter checked him for weapons, but testified that he did not tell Peters he was under arrest, handcuff him, or read him his Miranda rights at that time.

Officer Jeter gave one of Peters' passengers, Eddie Hough, the horizontal gaze nystagmus test and permitted him to drive Peters' vehicle to follow the officer to the police station. Hough testified that he had not been drinking because he is diabetic and was taking medications which his doctor informed him should not be combined with alcohol. Hough testified that Peters' hands were behind him when Officer Jeter placed Peters in the patrol car, but admitted that he did not actually see whether Peters was wearing handcuffs. Peters claims that he was handcuffed.

After arriving at the police station two to three minutes later, Officer Jeter gave Peters a breath analysis test. Officer Jeter testified that he had certification from the Department of Health ("DOH") to operate the Breathalyzer device, and that he performed the test according to DOH regulations. The test indicated that Peters' blood alcohol concentration ("BAC") was above .10 percent.[2]

1. We note that Peters was forty-two years of age at the time of his arrest.

2. Petitioner Peters stipulated at trial that the Breathalyzer device had been tested within

Officer Jeter then told Peters he was under arrest for driving while intoxicated. He advised Peters of his rights under the Missouri implied consent law, and requested to perform the test again. Officer Jeter testified that he observed Peters for the required fifteen-minute interval prior to administering the second exam to make sure that Peters did not ingest anything orally. Peters did not consume anything during that time period. Officer Jeter gave the test again, and it showed that Peters had a blood alcohol content above .10%. Jeter issued Peters a citation for violating the Hollister, Missouri municipal ordinance prohibiting persons from driving while intoxicated.

Officer Jeter admitted on cross-examination that speeding is not necessarily a sign of intoxication. He testified that out of the eighty or more DWI arrests he had made, he had only waited to tell an individual he was under arrest for driving while intoxicated until after he administered an initial breath test on one other occasion.

Subsequent to Peters' arrest, the Director of Revenue notified Peters' of the Director's intent to revoke Peters' Missouri driver's license for a thirty-day period commencing July 6, 1999, under § 302.500, RSMo Supp.1998. On July 1, 1999, pursuant to § 302.535, RSMo Supp. 1998, Peters filed a petition to review the revocation with the Circuit Court of Taney County. The court held a hearing on November 3, 1999. On November 16, 1999, the court set aside the revocation of Peters' driver's license. The Director of Revenue filed its notice of appeal on December 23, 1999. On February 25, 2000, this court dismissed the appeal for lack of jurisdiction as the appeal was taken from an order that was not a judgment. Judgment was entered on March 1, 2000. A subsequent notice of appeal from that judgement was filed on behalf of the Director of Revenue on April 7, 2000.

In its one point relied on, Appellant argues that the trial court erred in setting aside the Director's revocation of Peters' driver's license

because its judgment was against the weight of the evidence in that the Director proved that the arresting officer had probable cause to arrest Peters at the time the arrest was made because Peters was speeding, he admitted to having drunk a pitcher of beer, his eyes were watery and glassy, he smelled of intoxicants, he failed the horizontal gaze nystagmus test, and he had a blood alcohol concentration of at least .10%.

Respondent counters that there was no error in the trial court's decision because the officer did not have sufficient probable cause to arrest the Respondent for driving while intoxicated "in that the officer observed that Respondent had no impairment of motor skills such as his balance, walking, turning, coordination or dexterity, that his speech was coherent, that his pupils were normal and that his ability to follow instructions was good."

■ The standard of appellate review enunciated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976), applies to review of a judgment upon trial de novo in a proceeding under § 302.535. *House v. Director of Revenue*, 997 S.W.2d 135, 138 (Mo.App.1999). Thus, this court will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id.*

■ For driving privileges to be suspended under § 302.505.1, the Director of Revenue must show, by a preponderance

the past 35 days, and that the officer who maintained the machine was qualified to do so.

of the evidence, that (1) the driver was arrested on probable cause that he or she was committing an alcohol-related driving offense, and (2) the driver had been driving at a time when his or her blood alcohol concentration was at least .10% by weight. *House,* 997 S.W.2d at 138; *Wisdom v. Director of Revenue,* 988 S.W.2d 127, 129 (Mo.App.1999). We note that probable cause for the initial stop is not required to suspend the license of a motorist who is at least twenty-one years of age. *Riche v. Director of Revenue,* 987 S.W.2d 331, 336 (Mo.banc 1999), *overruling Aron v. Director of Revenue,* 737 S.W.2d 718 (Mo. banc 1987). Thus, probable cause to arrest for an alcohol-related traffic violation which supports an administrative license suspension may be developed after the officer stops the motorist, regardless of whether the officer had probable cause for the stop. *See Wisdom,* 988 S.W.2d at 130. Whether the arrest itself was valid is irrelevant. *See id.*

■ We begin our analysis with discussion of the second showing required under § 302.505.1, that the motorist was driving at a time that his blood alcohol concentration was at least .10% by weight. In the present case, the Director of Revenue presented evidence that two breath analysis tests taken by Peters on March 30 showed that he had a blood alcohol concentration over .10%.

■ To establish a proper foundation for the admission of the result of an alcohol breath test establishing a blood alcohol concentration above .10%, the Director must show that the person administering the test followed the Department of Health's approved techniques and methods, had a valid permit to administer the test, and used equipment and devices approved by the Department of Health to administer the test. *See Smith v. Director of Revenue,* 13 S.W.3d 700, 708 (Mo.App. 2000). Evidence was presented at trial

satisfying these criteria, and Peters does not challenge whether these criteria were met on appeal.

Furthermore, Peters does not dispute that he had been driving the vehicle prior to Officer Jeter's stop. *Compare Hampton v. Director of Revenue,* 22 S.W.3d 217, 220–21 (Mo.App.2000) ("where the question of who was driving is put at issue in an hearing, the Director must offer proof that the person whose license is to be suspended was, in fact, the driver").

■ The evidence of the results of Peters' breath analysis test was admissible regardless of whether his arrest was valid, as the exclusionary rule does not apply to proceedings under § 302.505. *See Riche,* 987 S.W.2d at 336. Thus, because the Director set forth uncontroverted evidence that Peters was driving at a time when his blood alcohol concentration was above .10%, it has satisfied this second requirement.

■ Whether the Director of Revenue satisfied its burden of proving the first requirement, that Peters was arrested on probable cause that he was committing an alcohol-related driving offense, requires more consideration. Respondent Peters contends that he was arrested at the scene where the traffic stop occurred, and that the Officer did not have probable cause to arrest Peters at that time. Appellant notes that "it is unclear from the judgment whether the trial court believed that the arrest was made at the scene, or at the police station," but contends that "[i]rrespective of this ambiguity, ... Officer Jeter testified to facts constituting probable cause for arrest at either the scene or the station."

Although the trial court only stated in its judgment that "there was not sufficient probable cause for Plaintiff's arrest at the time the arrest was made," it concluded in its order entered on the docket sheet on

November 16, 1999, that "[t]he arresting officer did not have probable cause to arrest Petitioner until after the first [breath analysis]" and that "Petitioner was, in fact, under arrest when transported to Hollister [police department]."

■ Viewing the evidence and inferences favorably to the trial court's ruling, *see State v. LeMasters*, 878 S.W.2d 485, 489 (Mo.App.1994), we conclude that the arrest occurred at the scene. "An arrest occurs when surrounding circumstances are such that a reasonable person would believe that he or she is not free to leave; that is, when his or her person is seized by law enforcement authorities." *State v. Bigsby*, 891 S.W.2d 160, 163 (Mo.App. 1995), *citing U.S. v. Mendenhall*, 446 U.S. 544, 553–54, 100 S.Ct. 1870, 64 L.Ed.2d 497.

■ Although "[a]n individual who voluntarily accompanies a law enforcement officer to a police station is not in custody," *Weldin v. State*, 973 S.W.2d 107, 112 (Mo. App.1998), there is evidence in this case that Peters' accompaniment of Officer Jeter to the Hollister police department was accomplished through the officer's exercise of authority.

Officer Jeter testified that he did not recall placing Peters in handcuffs. However, Peters testified that he was handcuffed before Officer Jeter placed him in the backseat of his patrol car; Peters' witness, Eddie Hough, testified that he observed Peters' hands behind his back, as though they were handcuffed, when Jeter placed Peters in the car and while Peters sat in the backseat.

■ The trial court was free to believe Peters' and Hough's testimony over Jeter's. Where conflicting evidence is presented, we must give deference to the trial court's determination of the facts. *See Hawk v. Director of Revenue*, 943 S.W.2d 18, 20, 22 (Mo.App.1997). Assuming that Peters was handcuffed by Officer Jeter, we note that any reasonable person who has been handcuffed by a police officer would not believe that he or she was free to leave. Although a police officer may detain an individual for the purpose of conducting an investigation, and that detainment may continue "if a new factual predicate for reasonable suspicion is found," *see State v. Bunts*, 867 S.W.2d 277, 280 (Mo. App.1993), the detainment cannot reasonably be said to remain merely investigative once the officer has handcuffed the detainee. We find no error in the trial court's determination that the arrest occurred at the scene.

■ Having concluded that the arrest occurred at the scene, we now must determine whether there was probable cause for the arrest at that time. Probable cause exists when an officer possesses facts which would warrant a person of reasonable caution to believe that an offense has or is being committed and that the individual to be arrested committed it. *See Smith v. Director of Revenue*, 13 S.W.3d 700, 705 (Mo.App.2000); *Chancellor v. Lohman*, 984 S.W.2d 857, 858 (Mo. App.1998). Although mere suspicion is insufficient to establish probable cause, absolute certainty is not required. *Wilcox v. Director of Revenue*, 842 S.W.2d 240, 243 (Mo.App.1992).

In the present case, Officer Jeter observed that Peters smelled moderately of intoxicants. When asked if he had been drinking, Peters admitted that he had consumed a pitcher of beer earlier that evening. Peters' eyes were watery and glassy. Peters performance on the horizontal gaze nystagmus test, a field sobriety test, indicated that he was intoxicated. While Officer Jeter did not note any pronounced impairment of Peters' balance, walking, or turning, he observed that Peters was "not exactly surefooted." To the officer, this indicated that Peters was impaired.

Peters suggests that because he did not show pronounced impairment of his balance, walking and turning, the officer could not have had probable cause for the arrest. Certainly not every item on the list of potential observations on the Missouri Department of Revenue's Alcohol Influence Report must be recorded for a trained officer to make a determination of whether an individual was intoxicated. For example, although the presence of dirt, urine, vomit, or saliva on one's clothing are observations an officer could make on the report, an officer could determine that an individual who did not exhibit any of those criteria was intoxicated.

Peters also makes much of Officer Jeter's failure to conduct more than one field sobriety test. But, as noted by the court in *Chancellor*, "Such tests are not mandatory ... They merely are an aide to an officer's other observations in determining whether he has probable cause for arrest." 984 S.W.2d at 858. *See also Hawkins v. Director of Revenue*, 7 S.W.3d 549, 551–552 (Mo.App.1999).

In *Chancellor*, the appellate court reversed the circuit court's judgment reinstating Chancellor's driving privileges even though no field sobriety tests had been performed, based on the officer's other observations of Chancellor's condition, including the smell of alcohol on Chancellor's breath, his bloodshot, glassy eyes, his unsteady stance, and his erratic driving. In addition, Chancellor admitted he had drunk alcoholic beverages a brief time earlier. *Chancellor*, 984 S.W.2d at 858.

In *Hawkins*, the officer observed that the motorist, Hawkins, had watery, bloodshot eyes, that his pupils reacted poorly to light, that he swayed while he walked, and that he slurred his speech. Those observations, in addition to the fact that the motorist had been observed crossing the white line on the highway and admitted he had been drinking, were sufficient for the appellate court to find that the revocation of Hawkins' driving privileges was appropriate, even though no field sobriety tests were conducted. *Hawkins*, 7 S.W.3d at 551–552.

Although in the present case, the officer observed Peters speeding, not driving erratically, we think that his other observations of Peters' condition, as well as Peters' poor performance on a field sobriety test, gave the officer reasonable grounds to arrest Peters for driving while intoxicated. The officer testified that he believed Peters was intoxicated before he placed him in his patrol car. Officer Jeter's administration of the first breath analysis test, prior to reading Peters his Miranda rights or advising Peters regarding Missouri's implied consent law, was not necessary to establish probable cause. The weight of the evidence supports this finding.

The Director of Revenue met its burden of proving that the officer had probable cause to arrest Peters for driving while intoxicated and that Peters had been driving with a blood alcohol concentration above .10 percent. We reverse the circuit court's judgment and direct the circuit court to enter judgment upholding the director's order of revocation.

GARRISON, J., and MITCHELL, S.J., concur.