Sheila **HOPKINS–BARKEN,**
**Respondent,**

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Appellant.**

**No. ED 78756.**

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 25, 2001.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Theodore D. Agniel, Asst. Atty. Gen., St. Louis, MO, for Appellant.

Michael R. Young, Clayton, MO, for Respondent.

WILLIAM H. CRANDALL, Jr., Presiding Judge.

The Director of Revenue (Director) appeals from the judgment setting aside the suspension of Sheila Hopkins–Barken's driving privileges. We reverse and remand.

On August 22, 1999, a Maryland Heights police officer arrested Hopkins–Barken for driving while intoxicated. Hopkins–Barken consented to a breath test. The test showed a blood alcohol content of .107. An administrative hearing officer upheld Director's suspension of Hopkins–Barken's driving privileges. Hopkins–Barken filed a petition for a trial de novo with the circuit court. The court assigned the case to a traffic commissioner who conducted the trial.

At the trial, Director proceeded "on the records" consisting of three exhibits. Hopkins–Barken did not object to the admission of the three exhibits. One exhibit has the Alcohol Influence Report and a "Narrative" by the arresting officer that states as follows:

> At about 0051 hrs on 08/22/99 I was dispatched to 777 Casino Center Dr. reference an intoxicated subject attempting to get in her vehicle and drive.
>
> Upon arrival I contacted Harrah's security and a white female (later found to be a Sheila Hopkins–Bark[e]n) sitting in the driver's seat of her vehicle in the valet area. Security had attempted to persuade [ ] Hopkins–Bark[e]n to take a cab home or have someone pick her up at the casino prior to my arrival.

It should be noted that I also made several request[s] to stop Hopkins–Bark[e]n from driving her vehicle but to no avail. Hopkins[-Barken] stated she was going to drive anyway no matter what. She then started her vehicle and I proceeded back to my police vehicle in an attempt to follow the above subject and observe her driving to determine if in fact she would be driving impaired.

I then followed Hopkins–Bark[e]n in her 1995 Honda bmsl 446AFG black in color as she left the casino area. As she drove towards Earth [City] I observed her vehicle cross the white lines that separate the two lanes that exit the casino. When the Honda went around the curve located just before Earth [City] Hopkins–Bark[e]n made a wide turn thus driving into the lane to her right then returned to her proper lane. We then drove up to the electric signal at Earth [City] and stopped for the red light.

At this point I notified Sgt Wachter that the vehicle in question was the vehicle in front of my police unit. Sgt Wachter then engaged his emergency lights and pulled in front of the Honda to prevent her from driving further.

Both officers exited their vehicles and requested Hopkins–Barken to exit her vehicle. Hopkins–Barken was then placed under arrest and place[d] in my police vehicle. Since we were in the middle of the intersection the driver was conveyed to the station for sobriety test[s] where they could be performed safer. Her vehicle was secured on the shoulder near the entrance to the casino until it was picked up by Hopkins–Bark[e]n's son.

Once at the station Hopkins–Barken submitted to several sobriety test[s] with the results on page one of this report. After completion of the sobriety test[s] Hopkins–Barken's Miranda Rights and Implied Consent were read to her. Hopkins–Barken then agreed to the breath test with the results being found on page three of this report.

Hopkins–Barken was then properly booked for DWI and Failure to keep a vehicle in a single lane and issued summons for those charges.

The Alcohol Influence Report shows that Hopkins–Barken failed three sobriety tests. The report also provides under "Officer's observation" that there was a moderate odor of alcohol on Hopkins–Barken's breath, her eyes were bloodshot, she was excited and combative, and she was "swaying." The report also shows a blood alcohol concentration of .107.

Hopkins–Barken testified as follows. She had gone to the casino for a friend's birthday party. Between 8:00 p.m. and about "10:30 or 11:00" p.m. she consumed three-quarters of a glass of wine "before the hor[s d']oeuvres came," three-quarters of a glass of wine during dinner and a drink of champagne during a toast. After leaving the party, a casino valet brought her car. Her friend then told her she should not drive. A casino security officer said that neither her nor her friend should drive because the security officer smelled alcohol on both of them. The Maryland Heights police officer, who had been dispatched to the casino, told her he would follow her if she drove. She believed that the officer was going to follow her for her protection. While driving, she did not weave between lanes and properly signaled a lane change. When the police stopped her, she was "dazed and confused." She was placed in handcuffs prior to being put in the arresting officer's car.

The commissioner found that Hopkins–Barken had a blood alcohol concentration of .10% or more by weight. But the commissioner also found that the arresting

officer did not have probable cause to arrest Hopkins–Barken for driving while intoxicated or an alcohol related traffic offense. The commissioner recommended that Hopkins–Barken's driving privileges be reinstated. The circuit court adopted the commissioner's findings and recommendations as the judgment of the court. Director appeals, raising one point.

At the trial de novo, Director had the burden of proving by a preponderance of the evidence, that (1) Hopkins–Barken was arrested on probable cause that she was driving in violation of an alcohol-related offense, and (2) at the time of the arrest, Hopkins–Barken's blood alcohol content was .10 percent or greater. *Hollingshead v. Director of Revenue*, 36 S.W.3d 443, 445 (Mo.App. E.D.2001). Director's documentary evidence admitted into evidence without objection shows that Hopkins–Barken's blood alcohol content was .107. Director argues that the "uncontradicted evidence" showed that Hopkins–Barken was arrested by a police officer who had probable cause that she was driving while intoxicated.

A trial court is free to believe or disbelieve the testimony of a witness. *Peters v. Director of Revenue*, 35 S.W.3d 891, 896 (Mo.App. S.D.2001). But, while we defer to the findings of the trial court where credibility of witnesses is involved, we need not do so where the disputed question is not a matter of direct contradictions by different witnesses. *Myers v. Director of Revenue*, 9 S.W.3d 25, 28 (Mo. App. E.D.1999). In addition, our standard of review does not permit us to disregard uncontroverted evidence that support's Director's contention that all elements were proved. *Rain v. Director of Revenue*, 46 S.W.3d 584, 587 (Mo.App. E.D.2001).

There is no precise test for determining whether probable cause existed; rather, it is based on the particular facts and circumstances of each individual case. *Id.* at 588. In examining probable cause, courts consider the information in the officer's possession prior to the arrest and the reasonable inferences drawn therefrom. *Id.* at 587–88; *Peters*, 35 S.W.3d at 896; *Rinne v. Director of Revenue*, 13 S.W.3d 658, 660 (Mo.App. W.D.2000). Probable cause to arrest for driving while intoxicated exists when a police officer observes an unusual or illegal operation of a motor vehicle and observes indicia of intoxication upon coming into contact with the driver. *Rain*, 46 S.W.3d at 587. "Information given by eyewitnesses to the arresting officer directly, or through other officers, even if hearsay, is admissible to establish probable cause because it is not offered for its truth, but to explain the basis for a belief that probable cause to arrest existed." *Id.* at 588. Although mere suspicion is not sufficient to establish probable cause, absolute certainty is not required. *Id.* "There is a 'vast gulf' between the quantum of information necessary to establish probable cause and the quantum of evidence required to prove guilt beyond a reasonable doubt." *Id.* Furthermore, the determination of whether probable cause existed must be made in relation to the circumstances as they would have appeared to a prudent, cautious and trained police officer. *Hamm v. Director of Revenue*, 20 S.W.3d 924, 926 (Mo.App. S.D. 2000).

The arresting officer was dispatched to the casino in reference to an "intoxicated" person. Casino security had attempted to persuade Hopkins–Barken to take a cab or have someone pick her up. The officer observed that there was a moderate odor of alcohol on Hopkins–Barken's breath, her eyes were bloodshot, and she was excited and combative. At that point, the officer had probable cause to believe that Hopkins–Barken was intoxicated. The of-

ficer mistakenly allowed Hopkins–Barken to drive away. The officer's mistake, however, does not negate the fact that there was uncontradicted evidence sufficient to establish probable cause to believe Hopkins–Barken was intoxicated. Furthermore, after Hopkins–Barken was placed in handcuffs and taken to the station she failed three sobriety tests. Director's point is granted.

The judgment is reversed and the cause remanded with directions to reinstate the suspension of Hopkins–Barken's driving privileges.

KATHIANNE KNAUP CRANE, J. and ROBERT G. DOWD, JR., J.: Concur.