**Dwight J. JONES, Appellant,**

v.

**DIRECTOR OF REVENUE,**
**Respondent.**

**No. WD 65635.**

Missouri Court of Appeals,
Western District.

Nov. 7, 2006.

Jonathan M. Guilfoil, Kansas City, for appellant.

James A. Chenault III, Jefferson City, for respondent.

PAUL M. SPINDEN, Judge.

Dwight Jones appeals the circuit court's judgment upholding the decision by the director of the Department of Revenue to revoke his driving privileges pursuant to Section 577.041, RSMo Supp.2003, for refusing to submit to a breathalyzer test. Jones contends that the circuit court's judgment is not supported by substantial evidence because the director did not establish that the arresting officer had reasonable grounds to believe that Jones was driving while intoxicated when the officer arrested him. We affirm the circuit court's judgment.

The evidence established that, at about midnight on October 1, 2004, Jones and Keenan Scoville were involved in a one-car accident on the grounds of Sterling Elementary School in Warrensburg. When Officer Jason Gilbert arrived at the scene, Jones and Scoville were standing near the vehicle. Gilbert got out of his patrol car, shined a flashlight on Jones and Scoville, and told them to put their hands on the vehicle. When they complied, Gilbert handcuffed them. Officer Jeff Reynolds arrived on the accident scene within a minute later.

According to Reynolds, Gilbert said that he had handcuffed Jones and Scoville "for officer safety" and that he did not consider them to be under arrest.[2] Gilbert told Reynolds that Jones had said that he was the car's driver. Reynolds approached Jones and removed the handcuffs. Reynolds asked Jones to explain what had happened, and Jones denied being involved in the accident. When Reynolds asked Jones to whom the vehicle belonged, Jones did not respond. Reynolds determined from the vehicle's license plate number that Jones was the vehicle's registered owner.

Reynolds smelled a very strong odor of intoxicants about Jones' person and no-

ticed that Jones' eyes were watery, glassy, and staring. Reynolds asked Jones whether or not he had been drinking, and Jones denied that he had been. Jones also denied that he was driving the vehicle. Reynolds asked Jones to perform some field sobriety tests. Jones failed the horizontal gaze nystagmus test. During the walk-and-turn test, Jones could not maintain the heel-to-toe stance during the instructions, and he missed touching heel to toe on a total of seven steps. He also made an improper turn and counted the wrong number of steps. During the one-leg stand test, Jones swayed, used his arms for balance, and put his foot down more than three times. From these tests, Reynolds concluded that Jones was intoxicated and arrested him for driving while intoxicated.

Reynolds took Jones to the police station and read the implied consent and *Miranda* warnings to him. Jones agreed to submit to a chemical test of his breath but, during the test, kept blowing around the mouthpiece's sides despite Reynolds' instructing him to use his lips to make a seal around the mouthpiece. When Jones refused to follow Reynolds' instructions concerning how to blow, Reynolds deemed him to have refused to take the test. The breathalyzer instrument subsequently printed out a reading indicating an "invalid sample."

The director of the Department of Revenue revoked Jones' driving privileges pursuant to Section 577.041 for refusing to submit to a breathalyzer test. Jones filed a petition for review with the circuit court to challenge the director's revocation, and the circuit court issued a judgment upholding the revocation. Jones appeals.

Section 577.020.1, RSMo Supp.2005, provides that any person who drives on Missouri's public highways has impliedly given consent to a chemical test to determine the

2. The director did not call Gilbert as a witness.

content of drugs or alcohol in his or her blood. The statute mandates that, to have a right to insist on giving the test, officers must have arrested the driver on reasonable grounds to believe that the person was driving in an intoxicated or drugged condition. To revoke a driving license on the ground that a driver has refused to submit to a chemical test, the director must establish that a qualified law enforcement officer arrested the driver with reasonable grounds to believe that the driver was driving while in an intoxicated or drugged condition and that the driver refused to submit to a chemical test. Section 577.041.4; *Zimmerman v. Director of Revenue*, 988 S.W.2d 583, 585 (Mo.App. 1999). If the director does not establish one of these requirements, the driver's driving privileges must be reinstated. Section 577.041.5; *Zimmerman*, 988 S.W.2d at 585.

Jones does not contest that he was arrested and refused to take the chemical test. The only issue is whether or not the arresting officer had probable cause to believe that Jones was driving a motor vehicle in an intoxicated condition.

■ Jones contends that Gilbert's handcuffing him constituted an arrest and that Gilbert did not have reasonable grounds to believe that he was driving while intoxicated. Jones asserts that Reynolds did not acquire reasonable grounds to believe that he was driving while intoxicated until after Gilbert had arrested him; therefore, the director could not revoke his driving license for refusing to submit to a chemical test. We disagree.

■ In determining whether an officer has reasonable grounds to believe that a person is driving while intoxicated, the courts must evaluate the evidence from the viewpoint of a cautious, trained, and prudent police officer at the scene at the time of the arrest. *Hinnah v. Director of Revenue*, 77 S.W.3d 616, 621 (Mo. banc 2002). Reasonable grounds, therefore, must be based on information in the officer's possession at the time of the arrest, not on information acquired after the fact.

Section 577.041, however, does not require the arresting officer to have reasonable grounds to believe that the driver was driving while in an intoxicated condition before he makes the initial stop. "It is sufficient if, after the stop, the arresting officer observes sufficient indicia of intoxication to reasonably believe the driver was driving a motor vehicle while intoxicated." *Gelsheimer v. Director of Revenue*, 845 S.W.2d 107, 108 (Mo.App.1993).

Gilbert's purpose for putting handcuffs on Jones was not to arrest him. His purpose was to protect himself. He was alone in the darkness facing two individuals whom he could not see without a flashlight. They appeared to be trespassing on school grounds, and he had reason to believe from a call to police headquarters that they had caused damage to the property.

■ Police officers may "take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. Hensley*, 469 U.S. 221, 235, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). Indeed, "danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car." *Maryland v. Wilson*, 519 U.S. 408, 414, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). An officer's handcuffing a suspect alone does not constitute an arrest when the officer's purpose is to ensure his safety.[3] *See Muehler v. Mena*,

---

**3.** Seemingly contrary is *Peters v. Dir. of Revenue*, 35 S.W.3d 891, 896 (Mo.App.2001), in which this court's Southern District noted that "any reasonable person who has been handcuffed by a police officer would not believe that he or she was free to leave." The court concluded, "Although a police officer

544 U.S. 93, 99–100, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005) (during execution of search warrant, officer's detaining suspect in handcuffs during the search did not violate the Fourth Amendment and two- to three-hour detention in handcuffs did not outweigh government's continuing safety interests). *See also United States v. Yang,* 286 F.3d 940, 950 (7th Cir.2002); *United States v. Acosta–Colon,* 157 F.3d 9, 18 (1st Cir.1998); *Washington v. Lambert,* 98 F.3d 1181, 1186 (9th Cir.1996); *United States v. Blackman,* 66 F.3d 1572, 1576 (11th Cir.1995), *cert. denied,* 517 U.S. 1126, 116 S.Ct. 1365, 134 L.Ed.2d 531 (1996); *United States v. Hastamorir,* 881 F.2d 1551, 1556–57 (11th Cir.1989).

Gilbert's handcuffing Jones did not constitute an arrest. Jones was handcuffed for, at the most, only a minute until Reynolds arrived to backup Gilbert. Reynolds testified, without objection, that Gilbert had told him that Jones and Scoville were not under arrest and that he handcuffed them as a safety precaution. Gilbert's handcuffing Jones and Scoville for his safety was reasonable given the circumstances.

Moreover, even had Gilbert arrested Jones when he placed handcuffs on him, the arrest would have been for acts other than driving while intoxicated. *See Dixon v. Director of Revenue,* 118 S.W.3d 302, 306 (Mo.App.2003). According to Reynolds' accident report, the accident occurred on private property, which was damaged: "[Jones] drove through an open gate on the east side of Sterling Elementary. [Jones] drove around in the grass, lost control and hit a chain link fence support post on the east side of the building." When Gilbert arrived at the scene, he saw Jones and Scoville standing outside of the vehicle and told them to walk forward and to put their hands on the vehicle.[4] He then handcuffed both Jones and Scoville. Hence, the record refutes any contention that Gilbert intended his "arrest" to be an arrest for driving while intoxicated.

■ Once Reynolds arrived on the scene, he immediately removed the handcuffs from Jones. Reynolds testified, without objection, that Gilbert had told him that Jones had admitted that he was the vehicle's driver. An officer can rely upon information provided by another officer to establish reasonable grounds. *Burleson v. Director of Revenue,* 92 S.W.3d 218, 221 (Mo.App.2002). Reynolds also discovered that the vehicle was registered in Jones' name. Reynolds smelled a very strong odor of intoxicants about Jones' person and noticed that Jones' eyes were watery, glassy, and staring. Reynolds concluded that Jones had failed his sobriety tests. Reynolds had reasonable grounds to believe that Jones was driving a motor vehicle while intoxicated when he arrested him for driving while intoxicated.

We, therefore, affirm the circuit court's judgment.

may detain an individual for the purpose of conducting an investigation, and that detainment may continue 'if a new factual predicate for reasonable suspicion is found,' the detainment cannot reasonably be said to remain merely investigative once the officer has handcuffed the detainee." *Id.* (citation omitted). Also, this court, in *Hlavacek v. Dir. of Revenue,* 129 S.W.3d 374, 379 (Mo.App.2003), held that an arrest occurred when the officer handcuffed the driver. Unlike this case, however, neither officer in the Peters and Hlavacek cases perceived an issue of safety.

4. Jones testified that Gilbert had asked him whether or not he had been drinking before handcuffing him, but Scoville said that Gilbert did not ask them anything before handcuffing them. When weighing witness credibility, the circuit court is free to accept or to reject all, part, or none of the testimony of any witness. *Stewart v. Dir. of Revenue,* 75 S.W.3d 900, 903 n. 2 (Mo.App.2002).

HAROLD L. LOWENSTEIN, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.