**Kaley Jean LITTLE, Petitioner–
Respondent,**

v.

**Trish VINCENT, Director of Revenue
for Department of Revenue,
Respondent–Appellant.**

No. 28474.

Missouri Court of Appeals,
Southern District,
Division Two.

April 4, 2008.

Kaley J. Little, acting Pro Se, of Blue Eye, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen.; Jeannie Desir, Assistant Attorney General, of Jefferson City, MO, for respondent.

DON E. BURRELL, Judge.

The Director of Revenue, State of Missouri ("Director") appeals from a judgment reinstating Kaley Little's ("Little") driving privileges after the Director had suspended Little's privileges for driving while intoxicated.[1]

After the Director issued the suspension, Little petitioned for a trial *de novo* pursuant to section 302.535.[2] At trial, Little and the Director agreed to submit the case solely on the Director's records. Those records consisted of, among other items, an alcohol influence report ("AIR"), a printout from the DataMaster breathalyzer machine ("DataMaster") indicating Little's blood alcohol content, the arresting officer's narrative report, and a maintenance report for the DataMaster. Little did not testify or present any other evidence.

The records presented to the trial court indicated that on April 10, 2006, Officer Mathew S. Walker ("Walker") of the Reeds Spring Police Department observed a vehicle weave over the shoulder and center lines on three separate occasions. Walker initiated a traffic stop and identified the driver of the vehicle as Little. While speaking to Little, Walker smelled the odor of intoxicants coming from her and observed that her eyes were watery, bloodshot, staring, and exhibited a slow reaction to light. Walker indicated that Little appeared confused when he asked to see her driver's license and proof of insurance, and that he had to repeat himself in order for Little to produce her proof of insurance. Walker then asked Little how much she had had to drink; she replied "not very little" and admitted that she had been drinking earlier with friends. Walker described Little's speech as stuttering and confused. Little had trouble standing as she exited her vehicle and Walker had to catch her to prevent her from falling over. Walker asked Little to take several field sobriety tests and had to repeat his instructions to her several times because she did not comprehend them at first.

The first test Little was asked to perform was the horizontal gaze nystagmus ("HGN") test. Walker stated that Little showed distinct nystagmus at maximum deviation and an onset of nystagmus prior to forty-five degrees. Additionally, Little's eyes showed a lack of smooth pursuit.

Next, Walker had Little perform the one-leg stand test. Little tried to begin the test while Walker was still instructing her on how to do it. Once Walker finished his instructions, Little started the test again but was unable to make it to the count of "one" before having to put her other foot down. This inability to reach the count of "one" happened on each of the three times Little attempted the one-leg stand. Walker and another officer who had arrived on scene had to intervene after each of her attempts in order to prevent Little from falling down. Walker described Little's balance and walking in the AIR as swaying, wobbling, stumbling and falling.

Walker decided not to have Little perform the walk and turn test because they were pulled over alongside a highway and he was afraid she might fall into traffic.

---

1. Respondent did not file a brief. While there is no penalty for failing to do so, we are necessarily required to decide the case without the benefit of that party's authorities and points of view. *State v. Johnson*, 172 S.W.3d 900, 902 n. 1 (Mo.App. S.D.2005).

2. Unless otherwise noted, all references to statutes are to RSMo Cumm.Supp. (2006).

The last test Little was asked to perform was a finger count. Little skipped the number "three" in her counting sequence and failed to touch her thumb to the tip of her finger on every attempt.

Walker then asked Little to provide a breath sample for a portable breath test. Because Little was unable to blow a steady stream of air into the instrument, it indicated the presence of alcohol but was unable to produce an accurate reading.

After the above described tests were completed, Walker placed Little under arrest and conducted a search of her vehicle incident to that arrest. Walker found a nearly empty 750 milliliter bottle of Captain Morgan's Spiced Rum on the front passenger floor. The records presented at trial do not indicate that anyone else was in Little's vehicle at the time of the stop.

When Walker placed Little in his patrol car, Little vomited on herself. At this point, Walker became concerned that Little might have alcohol poisoning and told dispatch to send an ambulance to their location. Little vomited an additional two times before the ambulance could arrive. Once the ambulance arrived, Little refused medical care. Walker then transported Little to the Branson West Police Department to have her provide a breath sample for the DataMaster. On his way to the police station, Walker had to pull over in order to allow Little to vomit yet a fourth time.

Walker read Little her *Miranda*[3] rights and her rights under Missouri's implied consent law at 9:25 P.M. and Little agreed to provide a breath sample for the Data-Master. Walker stated that he observed Little for at least fifteen minutes prior to her providing the breath sample and that, during this time period, Little did not smoke, vomit, or place anything in her

mouth. The DataMaster breath exam was conducted by Stone County Deputy Zachary Cuzzort ("Cuzzort") at 9:46 P.M. and returned a result of a .112% blood alcohol content level. At the time of the test, Cuzzort had a valid permit to operate the DataMaster. Little was charged with driving while intoxicated, failing to maintain her vehicle on the right side of the road, and with an open container violation.

Based on Walker's report, the Director suspended Little's driver's license pursuant to section 302.505. After an administrative hearing in which the suspension was sustained, Little petitioned for a trial de novo.

At trial, Little's counsel argued that Walker failed to wait fifteen minutes after Little last vomited before asking her to submit to the DataMaster test. The trial court found that the Director had failed to make a *prima facie* showing of probable cause that Little was driving while intoxicated. The trial court also stated that the Director had "failed to show by substantial and credible evidence that proper procedures were observed in the conduct of the blood alcohol test, standard field sobriety tests or horizontal gaze and nystagmus test." According to the trial court, the Director failed to demonstrate by a preponderance of the evidence that Little was driving while intoxicated and ordered that Little's license be reinstated. The Director now appeals and claims there is no evidence to support the judgment.

### Standard of Review

 After a court-tried case, an appellate court will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536

---

**3.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

S.W.2d 30, 32 (Mo. banc 1976); *Peters v. Director of Revenue,* 35 S.W.3d 891, 894 (Mo.App. S.D.2001). "[W]hen the evidence is uncontroverted and the case is virtually one of admitting the facts or when the evidence is not in conflict, we are not obligated to defer to the trial court's findings." *Tinker v. Director of Revenue,* 125 S.W.3d 329, 330–331 (Mo.App. E.D.2003).

### Analysis

■ Under section 302.505, the Director must show by a preponderance of the evidence that 1) a driver was arrested upon probable cause to believe he or she was driving while intoxicated, and 2) that the driver had a blood alcohol content of at least .08%. *Vanderpool v. Director of Revenue,* 226 S.W.3d 108, 109 (Mo. banc 2007).[4] Section 302.312 provides that "[c]opies of all papers, documents, and records lawfully deposited or filed in the offices of the department of revenue ... properly certified by the appropriate custodian ... shall be admissible as evidence in all courts of this state[.]"

■ An officer has probable cause to arrest when he possesses facts that would warrant a person of reasonable caution to believe that an offense has or is being committed. *Peters,* 35 S.W.3d at 896. Absolute certainty is not required. *Id.*

■ In the case at bar, we find error in the trial court's conclusion that the Director failed to prove Walker had probable cause to arrest Little for committing an alcohol-related driving offense. Walker smelled alcohol on Little's breath and when he asked her how much she had had to drink, she responded, "not very little." Little appeared confused when asked for her driver's license and proof of insurance and Walker had to repeat his request for proof of insurance. Walker noted that Little's eyes appeared watery, bloodshot, staring, and that they reacted slowly to light. Her speech was confused and she was stuttering. Walker had to repeat the field sobriety examination instructions to Little who attempted to start at least one of the tests before Walker had finished giving the instructions. She lost her balance, swayed, stumbled, and would have actually fallen to the ground several times if the officers had not been there to hold her up. Little performed poorly on all three of the field sobriety tests she attempted.

■ In its written judgment, the trial court found that the Director failed to present substantial and credible evidence that the field sobriety tests were conducted using proper procedures. This finding was against the weight of the only evi-

---

4. We pause to note that section 302.505 literally provides that "[t]he department shall suspend or revoke the license of any person upon its determination that the person was arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine was eight-hundredths of one percent or more by weight ... *or* driving with excessive blood alcohol content in violation of section 577.012[.]" (emphasis added) However, the cases dealing with this statute have required the Director to demonstrate both that probable cause existed to arrest the driver for driving while intoxicated *and* that the alcohol concentration in the driver's blood, breath or urine was *actually* above the legal limit. *See, e.g., Vanderpool,* 226 S.W.3d at 109; *White v. Director of Revenue,* 227 S.W.3d 532, 534 (Mo.App. E.D.2007); and *Peters,* 35 S.W.3d at 895. Therefore, in order to prove that the driver's alcohol concentration was above the legal limit, courts have relied on the results of breathalyzer, blood, and urine tests despite the fact that the actual administration of these tests occurs well after the arrest has already been made. *See Vanderpool,* 226 S.W.3d at 110. As we are bound by our Supreme Court's holdings, we continue to follow the interpretation of section 302.505 as expressed in *Vanderpool* and *Coyle v. Director of Revenue,* 181 S.W.3d 62, 64 (Mo. banc 2005).

dence presented. Little presented no evidence that the field sobriety tests were in some way improperly administered. Even if the court were to disregard the field sobriety tests entirely, there would remain substantial and credible evidence that Little was intoxicated and we hold that the trial court erred in not finding that the Director had produced adequate evidence to demonstrate probable cause for Walker to arrest Little for committing an alcohol-related driving offense. *See Howdeshell v. Director of Revenue,* 184 S.W.3d 193, 198–99 (Mo.App. S.D.2006).

Next, we turn to the trial court's finding that the Director failed to demonstrate that the blood alcohol test was conducted with the proper procedures. "To establish a *prima facie* foundation for the admission into evidence of the results of a breathalyzer test, the director must establish the test was performed: (1) following the approved techniques and methods of the division of health, (2) by an operator holding a valid permit, (3) on equipment and devices approved by the division." *Coyle v. Director of Revenue,* 181 S.W.3d 62, 64–65 (Mo. banc 2005).

The Missouri Division of Health's regulations are found at 19 CSR 25–30.060 and require an observation period of the subject to ensure that the person does not vomit, smoke or place anything into their mouth in the fifteen minutes prior to taking the test. Walker indicated in his AIR that he observed Little for fifteen minutes prior to her taking the test and that she did not vomit, smoke or place anything in her mouth during that period of time. Little presented no evidence to rebut Walker's statement. Additionally, Cuzzort filled out the proper form required by 19 CSR 25–30.060 and certified that the proper procedure was used in administering the test.

The breathalyzer examination was administered by Cuzzort who had a valid permit to operate it. Little presented no evidence to challenge Cuzzort's permit.

Finally, the DataMaster is a device approved by the division in 19 CSR 25–30–050. Little presented no evidence to rebut the Director's evidence that the DataMaster was used to obtain her breathalyzer results. In any event, the records submitted into evidence by stipulation of the parties—including the blood-alcohol test results—were not objected to by Little. The Director must establish that the foundational prerequisites were met only when a timely objection to the admission of the test results is made. *Bozarth v. Director of Revenue,* 168 S.W.3d 78, 82 (Mo.App. E.D.2005).

In summation, the trial court appears to have disbelieved the Director's evidence even though it was uncontradicted. A legitimate factual dispute or credibility determination must exist before a trial court can disregard evidence that supports the Director's *prima facie* case. *Howdeshell* at 199. In a case submitted entirely on the Director's records, a legitimate dispute to be resolved by the trial court may arise if those documents are internally inconsistent with one another. *Id.* No such inconsistency exists in the evidence submitted here.

Based on the foregoing, we hold that the trial court's judgment is not supported by the evidence. The Director made a *prima facie* case for suspension that Little failed to rebut. We reverse the judgment and remand the case with directions that the trial court reinstate the suspension previously ordered by the Director.

LYNCH, C.J., and RAHMEYER, J., Concur.