William Edward LUNSFORD, Petitioner–Respondent,

v.

DIRECTOR OF REVENUE, STATE OF MISSOURI, Respondent–Appellant.

No. 21643.

Missouri Court of Appeals, Southern District, Division One.

May 29, 1998.

---

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Sp. Asst. Atty. Gen., Mo. Dept. of Revenue, Jefferson City, for appellant.

James A. Broshot, Mazzei & Broshot, Charles R. Leick, Steelville, for respondent.

GARRISON, Presiding Judge.

The Director of Revenue (the "Director") suspended William Edward Lunsford's driver's license pursuant to § 302.505[1] after he was arrested for driving while intoxicated. After an administrative hearing, the Director upheld the suspension, and Lunsford petitioned for a trial *de novo* pursuant to § 302.535. The trial court ordered the Director to reinstate Lunsford's driver's license, a decision the Director now appeals. We reverse and remand.

On the evening of June 27, 1996, Trooper Steven Childers of the Missouri Highway Patrol noticed a brown Chevrolet truck driving through Steelville, Missouri. Trooper Childers had another motorist pulled over at the time, but he could hear very loud music coming from the Chevrolet truck. About thirty minutes later, Trooper Childers observed the truck again, once more hearing loud music coming from it. Believing that the loud music constituted a violation of § 307.170,[2] he stopped the truck, and found Lunsford at the wheel. Trooper Childers detected the odor of intoxicants coming from the vehicle, and saw a large wet spot on the front of Lunsford's pants. At the request of Trooper Childers, Lunsford got out of the truck and accompanied him to his patrol car.

In the car, Trooper Childers continued to smell intoxicants, and noticed that Lunsford's speech was slurred and "mumbled." He also noticed that Lunsford's eyes appeared to be watery, bloodshot, and glassy. He asked Lunsford if he had been drinking, and Lunsford replied that he had had a beer earlier. Trooper Childers then administered several field sobriety tests, the results of which caused him to conclude that Lunsford was intoxicated, and subsequently placed him under arrest for driving while intoxicated in violation of § 577.010. A breath test revealed that Lunsford had a blood alcohol concentration of .18 percent.

At the trial *de novo*, Lunsford argued that the Director's suspension of his driver's license was invalid because Trooper Childers lacked probable cause to stop him initially. The trial court made no findings as to whether Trooper Childers had probable cause to arrest Lunsford for driving while intoxicated, or as to Lunsford's blood alcohol concentration. Instead, it found that the Director did not have to prove that the stop was lawful or based on probable cause, but then held that Trooper Childers had not "properly stopped" Lunsford, and ordered the Director to reinstate Lunsford's driver's license. This court

---

1.  All statutory references are to RSMo 1994.

2.  Section 307.170 provides, in pertinent part, that, "[m]uffler cutouts shall not be used and no vehicle shall be driven in such manner or condition that excessive and unnecessary noises shall be made by its machinery, motor, signaling device, or other parts, or by any improperly loaded cargo."

will affirm the trial court's decision unless no substantial evidence supports it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976).

In her sole point on appeal, the Director contends that the trial court erred in reversing the suspension of Lunsford's driver's license, because probable cause existed to arrest him for driving while intoxicated, as required by § 302.505. She expressly declines to "champion the validity of the stop" in this case, and instead argues that a proper or lawful stop is not an essential prerequisite to a valid license suspension, because the exclusionary rule does not apply in civil proceedings. Lunsford maintains that the Director's failure to demonstrate the lawfulness of the stop precludes her from suspending his license.

■ As both Lunsford and the Director acknowledge, the exclusionary rule is inapplicable in civil proceedings. *See State ex inf. Peach v. Boykins*, 779 S.W.2d 236, 237 (Mo. banc 1989); *In re Littleton*, 719 S.W.2d 772, 775 n. 2 (Mo.banc 1986). According to this principle, evidence obtained in an illegal manner, e.g., as a result of an illegal traffic stop, would not be inadmissible in a civil proceeding such as an administrative license suspension. *Gordon v. Director of Revenue*, 896 S.W.2d 737, 740 (Mo.App. E.D.1995). Thus, the Director argues, the legality or propriety of the initial traffic stop is irrelevant in such a case.

While conceding that the exclusionary rule does not require a proper or lawful stop in this case, Lunsford nonetheless contends that one is necessary for a valid license suspension under § 302.505. He relies on *Aron v. Director of Revenue*, 737 S.W.2d 718 (Mo. banc 1987). In a driver's license suspension proceeding under § 302.505, the *Aron* court observed that "the specific probable cause to arrest for an alcohol-related traffic violation and in turn to support an administrative

license suspension may be developed after a motorist is otherwise properly stopped." *Id.* at 719. Lunsford contends that this language requires a stop based on probable cause for a valid license suspension.

■ Our reading of § 302.505 reveals no reference to a proper or lawful stop as a prerequisite to a driver's license suspension.[3] Rather, the statute requires the Director to prove 1) the existence of probable cause to arrest the motorist for driving while intoxicated; and 2) a blood alcohol concentration of .10 percent or more in the motorist. *Keaveny v. Director of Revenue*, 962 S.W.2d 904, 906 (Mo.App. E.D.1998). Clearly, § 302.505 focuses on the grounds for the *arrest*, not for the initial *stop*. *Koons v. Director of Revenue*, 931 S.W.2d 210, 212 (Mo.App. W.D. 1996).

The Director correctly observes that the *Aron* court did not discuss what effect an illegal stop would have on an administrative license suspension proceeding. We note that *Aron* does not expressly hold that a lawful stop is necessary for a valid license suspension. Considering that fact, the absence of any language in the statute even mentioning the necessity of a lawful or proper stop, and the obvious inapplicability of the exclusionary rule in license suspension proceedings, we cannot conclude that *Aron* requires the Director to show probable cause for the initial traffic stop in a driver's license suspension under § 302.505. The Western, Eastern, and Southern Districts of this court have all reached similar conclusions. *See White v. Director of Revenue*, 946 S.W.2d 277, 279 (Mo.App. W.D.1997); *Klouzek v. Director of Revenue*, 932 S.W.2d 890, 892 (Mo.App. E.D. 1996); *Tidwell v. Director of Revenue*, 931 S.W.2d 488, 491 (Mo.App. S.D.1996).

■ To the extent that the trial court based its judgment on Trooper Childers's "improper stop" of Lunsford, it erroneously declared and applied the law, and erred in ordering the Director to reinstate Lunsford's

---

3. Section 302.505 provides, in pertinent part:
   1. The department shall suspend or revoke the license of any person upon its determination that the person was arrested upon probable cause to believe he was driving a motor vehicle while the alcohol concentration in the person's blood or breath was ten-hundredths of one percent or more by weight of alcohol in his blood. . . .

driver's license on that basis. We reverse this decision, and remand this case to the trial court for proceedings consistent with this opinion. On remand, the trial court shall determine whether Trooper Childers had probable cause to arrest Lunsford for driving while intoxicated, and make a factual finding as to his blood alcohol concentration at the time of the arrest.

CROW and BARNEY, JJ., concur.