**Travis Alan McFALL, Respondent,**

v.

**DIRECTOR, DEPARTMENT OF REVENUE, Appellant.**

**No. 26189.**

Missouri Court of Appeals, Southern District, Division Two.

May 18, 2005.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl Caponegro Nield, Asst. Atty. Gen., Jefferson City, for appellant.

No Brief Filed for Respondent.

Before BATES, C.J., SHRUM, and BARNEY, JJ.

PER CURIAM.

The Director of Revenue ("Director") appeals from a judgment setting aside the administrative suspension of the driver's license of Respondent Travis A. McFall ("Driver") after a trial *de novo* in the circuit court. Director contends the trial court erred in reinstating Driver's driving privileges because Director made a *prima facia* case for suspension which Driver failed to rebut. We reverse and remand the case with directions to enter a judgment sustaining the Director's suspension of Driver's driving privileges.

The parties submitted the case on Director's records to the court at a bench trial.[1] Driver presented no evidence at

---

1. " 'Copies of documents from the department of revenue are admissible as evidence so long as the copies are properly certified by the appropriate custodian or the Director.' "

trial. The record reveals that law enforcement officials were notified of a one-vehicle accident involving a pedestrian in front of the Kelso Country Club Bar on Messmer Street in Kelso, Missouri, which occurred at approximately 1:20 a.m. on May 4, 2003. Corporal Mark Winder ("Winder") of the Missouri State Highway Patrol was notified of the event at 1:45 a.m. and responded to the scene at 1:57 a.m. Winder was informed by local officers that as the bar closed, the patrons had emptied into the street and several fights had broken out. At about 1:20 a.m., one of the bar patrons, Justin Kluesner ("Kluesner"), was arguing with Jody Kelsey ("Kelsey"). During the argument, Kelsey pushed Kluesner, who then fell back and was struck by the right front corner panel of a gray Chrysler minivan which was passing by the scene. The minivan slowed briefly and then drove away.

Several patrons at the bar informed authorities that the minivan was owned and driven by Driver. At approximately 2:20 a.m., Winder went to Driver's residence in Scott City, Missouri. The minivan was not parked at the residence. As Winder made contact with Driver, Winder detected a strong odor of intoxicants on his breath and his eyes were glassy, bloodshot and staring. Driver denied being at the Kelso Country Club Bar that night and related that his minivan was at the home of his boss, William LeGrand ("LeGrand").

As a result of his discussion with Driver, Winder went to the home of LeGrand, whereupon Winder found the minivan. Upon inspection, the minivan had damage to the right front corner panel. When asked how long the minivan had been at

his home, LeGrand responded that it had been there "all day." LeGrand also appeared to Winder to be intoxicated as well as nervous and evasive. After further questioning, LeGrand admitted to Winder that Driver had driven the minivan to LeGrand's residence at approximately 1:30 a.m. that morning and "had asked him to park the vehicle in his garage ... to hide it." LeGrand said he did not question Driver.

At 2:40 a.m., Winder returned to Driver's residence. It was then that Driver admitted to having driven his minivan to LeGrand's residence; however, he stated that he did not remember driving the vehicle in front of the Kelso Country Club Bar earlier in the evening. It was at this point that Winder arrested Driver for leaving the scene of an accident. Driver was also informed of his *Miranda* [2] rights, which he waived, and he was then transported to the Scott County Jail for processing. While en route to the jail and after further questioning, Driver admitted that he was driving during the incident in question. He related that as the fights broke out, he was trying to leave the area. He felt a "bump" on the side of his minivan, but he was not aware that he had hit someone. When asked why he attempted to hide his vehicle and why he initially lied about his involvement in the accident, Driver stated he was "scared."

At the Scott County Jail, Winder administered three field sobriety tests to Driver; he performed poorly on the tests. At that point, Driver was advised that he was under arrest for driving while intoxicated pursuant to section 577.010. At 3:20 a.m.,

---

*Hobbs v. Dir. of Revenue*, 51 S.W.3d 874, 876 (Mo.App.2001) (quoting *Mills v. Dir. of Revenue*, 964 S.W.2d 873, 875 (Mo.App.1998)); § 302.312.

Unless otherwise set out, all statutory references are to RSMo 2000, and all Rule references are to Missouri Court Rules (2005).

**2.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Driver agreed to take a breath test. The result of the breath test showed his blood alcohol level to be .139 percent by weight. Driver's driving privileges were subsequently suspended by Director.

After a bench trial in which Driver presented no evidence, the trial court entered a judgment reinstating Driver's driver's license and striking the administrative suspension from Driver's driving record. In its judgment, the trial court set out that Driver "was not arrested upon probable cause to believe that [Driver] was driving a motor vehicle with an alcohol concentration of .08 or more by weight." The trial court explained that "because the arresting officer had not asked [Driver] if he had had anything to drink in the hour and a half preceding his arrest, the officer could have no possible way of believing that [Driver] was driving with a blood alcohol concentration in excess of .08 over one and a half hours earlier."

In her appeal, Director maintains the trial court erred in reinstating Driver's driving privileges because of the trial court's misapplication of the law and because the trial court's judgment was not supported by substantial evidence. Director maintains that

> the time between when [Driver] last drove and his arrest for DWI is not determinative of probable cause where the arresting officer has evidence that a driver identified by witnesses as [Driver] hit a pedestrian and left the scene in order to hide his vehicle, that vehicle had damage consistent with the witness reports of the crash and how it occurred, and [Driver] was found at home exhibiting indicia of intoxication, and [Driver] never claims, either to the officer or at trial, to have been drinking after driving.

We review the trial court's judgment after a trial *de novo* pursuant to the familiar standards established by Rule 84.13(d). *See also Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). "This Court will affirm the trial court's judgment unless there is no substantial evidence to support it, unless the decision is contrary to the weight of the evidence, or unless the trial court erroneously declares or applies the law." *Hinnah v. Dir. of Revenue,* 77 S.W.3d 616, 620 (Mo. banc 2002). " 'This Court defers to the trial court's determination of credibility.' " *Swanberg v. Dir. of Revenue,* 122 S.W.3d 87, 90 (Mo.App.2003) (quoting *Hinnah,* 77 S.W.3d at 620). However, "[i]f the evidence is uncontroverted or admitted so that the real issue is a legal one as to the legal effect of the evidence, then there is no need to defer to the trial court's judgment." *Hinnah,* 77 S.W.3d at 620. Deference to the trial court's findings and judgment is not required when the case is virtually one of admitting the facts or when the evidence is not in conflict. *Myers v. Dir. of Revenue,* 9 S.W.3d 25, 28 (Mo.App.1999).

To make a *prima facie* case for license suspension pursuant to section 302.505, "Director is required to show two elements by a preponderance of the evidence. First, the Director must establish that the person was arrested upon probable cause. Second, the Director must show that the person had a blood alcohol concentration of .080 percent [by weight] at the time of the arrest." [3] *Lawson v. Dir. of Revenue,* 145 S.W.3d 443, 445 (Mo. App.2004) (internal citation omitted).

"Probable cause exists when the facts and circumstances warrant a person of reasonable caution to believe that an

---

**3.** After an adverse decision from Director, a driver may file a petition for a trial *de novo* in circuit court. § 302.535.1; *Hlavacek v. Dir. of Revenue,* 129 S.W.3d 374, 377 (Mo.App.2003).

offense has been or is being committed, based on the circumstances as they appear to a prudent, cautious and trained police officer." *Walker v. Dir. of Revenue*, 137 S.W.3d 444, 446 (Mo. banc 2004). "It is not necessary for an officer to actually observe a person driving to have probable cause to arrest the person for driving while intoxicated." *Green v. Dir. of Revenue*, 148 S.W.3d 892, 895 (Mo.App.2004). "An officer has a right to rely upon information communicated via police dispatch . . . and information reported by citizen witnesses." *Id.* (internal citations omitted); *Spry v. Dir. of Revenue*, 144 S.W.3d 362, 369 n. 5 (Mo.App.2004) (holding that "[i]t is well-established that a police officer has a right to rely upon this type of information from citizen witnesses as one part of the factual matrix supporting a probable cause determination"). Also, "[a]n arresting officer may establish probable cause that a person was driving from the person's admissions alone." *Oates v. Dir. of Revenue*, 67 S.W.3d 664, 666 (Mo.App. 2002). "These showings must be made by a preponderance of the evidence." *Misener v. Dir. of Revenue*, 13 S.W.3d 666, 668 (Mo.App.2000) (overruled in part by *Verdoorn v. Dir. of Revenue*, 119 S.W.3d 543 (Mo.2003)). However, the "level of proof necessary to show probable cause under section 302.505 is substantially less than that required to establish guilt beyond a reasonable doubt." *Brown v. Dir. of Revenue*, 85 S.W.3d 1, 4 (Mo. banc 2002) (internal quotation omitted). "When Director makes a *prima facie* case, the burden then shifts to Driver." *Misener*, 13 S.W.3d at 668. However, the driver's burden is one

of production—not persuasion. The director retains the burden of proof throughout the proceeding. *Verdoorn*, 119 S.W.3d at 546.

 The disposition of this case is governed by *Howard v. McNeill*, 716 S.W.2d 912 (Mo.App.1986).[4] In *McNeill*, Officer Cordia received a report of an automobile collision which had occurred at 12:55 a.m. and he arrived at the scene some twenty-five minutes later. *Id.* at 913. Present at the scene was one of two drivers involved in the collision. *Id.* The other driver, McNeill, had been permitted to depart the scene in a friend's vehicle, to seek medical attention at a local hospital; however, "[a] radio call to the hospital revealed that [McNeill] had not arrived." *Id.* at 914.

Less than an hour later, Officer Cordia found McNeill riding as a passenger in his friend's vehicle. McNeill "appeared very intoxicated" to Officer Cordia and he was placed under arrest for driving while intoxicated. *Id.* He refused to submit to a test to determine his blood alcohol content. *McNeill*, 716 S.W.2d at 914. At the refusal hearing, McNeill "admitted that he was intoxicated at the time of his arrest, but explained the condition was brought about by his consumption of a half pint of whiskey supplied to him by [his friend] after the accident." *Id.* This claim was corroborated by his friend. *Id.* Witnesses at the scene also testified that they detected no sign McNeill had been drinking when they were with him at the scene of the accident. *Id.* However, "[n]o one had voiced to [Officer] Cordia any fact or opinion concerning

4. While *McNeill* is a "refusal" case under section 577.041, the requirement for a "reasonable grounds" determination to believe that the "person was driving while in an intoxicated . . . condition" are the same as in a section 302.505.1 case, where there must exist "probable cause to believe" that such person was "driving while intoxicated," as a

pre-requisite to suspension or revocation of an offender's driving privileges. § 577.041.2(a); § 302.505.1; *see Swanberg*, 122 S.W.3d at 90 (quoting *Hinnah*, 77 S.W.3d at 619–20) (holding that " '[r]easonable grounds' is virtually synonymous with probable cause").

[McNeill's] sobriety or lack thereof at the time of the accident. . . ." *Id.* The only facts available to Officer Cordia when the arrest was made were that McNeill had failed to go to the hospital and that at the time he was arrested he was undisputedly inebriated. *Id.*

In reversing the trial court's judgment, which had set aside Director's revocation of McNeill's driving privileges, the Eastern District of this Court initially noted that McNeill and his friend failed to "offer [to Officer Cordia] the potentially exculpatory fact of [McNeill's] heavy drinking after the collision," and then set out that:

> At the time of the arrest in this case, it was clear that [McNeill] was intoxicated, and Officer Cordia was possessed of reliable information that, approximately one hour before he encountered [McNeill] he had been operating a motor vehicle and was involved in a collision. Furthermore, although [McNeill] had been permitted to seek medical attention, he did not go to the hospital, possibly in an effort to avoid being seen by neutral observers. Such facts provided Officer Cordia with 'reasonable grounds' to believe that [McNeill] had been intoxicated at the time of the collision and authorized the arrest. [McNeill's] refusal warranted the Director's order of revocation.

*McNeill,* 716 S.W.2d at 915.

In the instant matter, the record shows that prior to Driver's arrest for driving while intoxicated (a) Driver, as in *McNeill,* immediately left the crash scene; (b) Driver first hid the minivan involved in the

accident and then fled to his home; (c) as in *McNeill,* within an hour of the collision Winder detected Driver had a strong odor of intoxicants on his breath and his eyes were glassy, bloodshot and staring, which are recognized indicia of intoxication;[5] and, (d) Driver, as in *McNeill,* did not inform Winder that he had been drinking alcoholic beverages subsequent to his involvement in the crash.[6]

Additionally, unobjected to evidence revealed that prior to arresting Driver for driving while intoxicated, Winder had received information from witnesses at the Kelso Country Club Bar which placed the gray Chrysler minivan "owned and driven by [Driver]" at the scene of the accident, where it was reported that he "slowed briefly and then left the scene" after having struck a pedestrian. Furthermore, subsequent to his arrest for leaving the scene of the accident and after waiving his *Miranda* rights, Driver admitted to Winder that he had been driving during the incident in question. Lastly, Driver performed poorly on the three field sobriety tests administered to him.

▬▬▬ Here, the gap in time between the accident and the arrest did not adversely affect the probable cause determination because "Director is not required to prove the time an accident occurred" in situations such as these. *Misener,* 13 S.W.3d at 668. Nor is it "necessary that the arresting officer possess all of the information concerning the offense and the arrestee's participation in it, in order to form a belief amounting to probable

---

5. *See Rain v. Dir. of Revenue,* 46 S.W.3d 584, 588–89 (Mo.App.2001) (finding that driver's glassy and bloodshot eyes, unsteadiness on his feet, slurred speech, and difficulty concentrating, were sufficient indicia of intoxication to provide reasonable grounds for the officer to believe that the driver was driving while intoxicated).

6. After Driver's arrest for driving while intoxicated, Winder noted in his "Alcohol Influence Report" ("AIR"), that Driver acknowledged not having consumed any alcoholic beverages since the accident.

cause." *McNeill,* 716 S.W.2d at 915. As previously related, to "form a belief amounting to probable cause, the arresting officer does not have to see the suspect driving." *Saladino v. Dir. of Revenue,* 88 S.W.3d 64, 70 (Mo.App.2002). While an arresting officer may not rely upon "mere suspicion" in making an arrest, *Cox v. Dir. of Revenue,* 37 S.W.3d 304, 307 (Mo.App. 2000), an "officer may rely upon circumstantial evidence." *Saladino,* 88 S.W.3d at 70.

Furthermore, even supposing the applicability of section 577.039 in this matter and its time limitation requirement of one and one-half hours preliminary to a warrantless arrest for a driver's violation of section 577.010 or 577.012, the finding of the trial court is in error. This is because Driver left the scene of the accident, "in which case such arrest without warrant may be made more than one and one-half hours after such violation occurred." § 577.039. In either event, the Supreme Court of Missouri "has recently reaffirmed that the exclusionary rule does not apply to civil license revocation proceedings." *Garriott v. Dir. of Revenue,* 130 S.W.3d 613, 616 (Mo.App.2004); *see also Riche v. Dir. of Revenue,* 987 S.W.2d 331, 335 (Mo. banc 1999). "According to this principle, evidence obtained in an illegal manner, e.g., as a result of an illegal traffic stop, would not be inadmissible in a civil proceeding such as an administrative license suspension." *Lunsford v. Dir. of Revenue,* 969 S.W.2d 833, 835 (Mo.App.1998). Lastly, we note that Driver's breath test result exceeded the legal limit of alcohol indulgence.

Here, on the record before us, Director met the burden of proving a *prima facie* case. *See Verdoorn,* 119 S.W.3d at 545. Driver was then entitled to rebut Director's case. *Id.* at 545. It was not rebutted by Driver, who presented no evidence.[7] *See Misener,* 13 S.W.3d at 668. Contrary to the trial court's holding, sufficient evidence exists to conclude the arresting officer had probable cause to arrest Driver for driving while intoxicated. *See id.; McNeill,* 716 S.W.2d at 915.[8]

---

7. Driver did not file a brief in this appeal.

8. We are aware of the recent holding of a panel of the Eastern District of this Court in *Pontius v. Dir. of Revenue,* 153 S.W.3d 1 (Mo. App.2004), a refusal case. In *Pontius,* the driver was also involved in an automobile collision and ultimately left the scene. *Id.* at 2. When the police arrived, the "[w]itnesses provided the police with a description of [Pontius]." *Id.* One hour later, police arrived at Pontius's home. *Id.* He appeared to match the description given them by the witnesses at the scene of the accident. *Id.* They also noticed Pontius exhibited indicia of intoxication, including the fact that he "had a strong smell of alcohol on his breath, his balance was uncertain, and his eyes were watery, bloodshot, and glassy." *Pontius,* 153 S.W.3d at 2. He was arrested for leaving the scene of an accident and for suspicion of driving while intoxicated. *Id.* He refused to submit to field sobriety tests and a breath test. *Id.* Witnesses at the scene identified Pontius as the operator of the car that hit them. *Id.* Director revoked Pontius' driving privileges pursuant to section 577.041. Pontius petitioned the trial court for a trial de novo. *Id.* Ultimately, during "the hearing, the trial court held the witness statements were hearsay and could not be considered by the court. Hence, the trial court reinstated [Pontius's] driving privileges." *Pontius,* 153 S.W.3d at 2. The Court did not address the Eastern District's *McNeill* decision in its opinion.

On appeal, the Eastern District of this Court set out that it "need not decide whether the civilian statements should have been admissible in this case because even if they were admitted, they would not establish reasonable grounds to believe [Pontius] was driving while in an intoxicated condition." *Id.* at 3. In holding that the police did not have reasonable grounds to believe Pontius was in an intoxicated condition when he was driving at the time of the accident, the court determined that the "first indicia [Pontius] was intoxicated occurred at his home, almost one hour

The judgment of the trial court is reversed and remanded and the trial court is instructed to enter a judgment reinstating Director's suspension of Driver's driving privileges.

after the collision." *Id.* "There is no evidence on the record indicating [Pontius'] condition at the time of the collision was anything but normal." *Id.* Accordingly, the court held that since Director failed to present a *prima facie* case, Pontius was not required to present rebuttal evidence and affirmed the judgment of the trial court. *Id.* at 4.

Unlike *Pontius,* in the instant matter, subsequent to his arrest for leaving the scene but before his arrest for driving while intoxicated, Driver admitted to Winder that he had been driving his vehicle at the time of the incident. Furthermore, after having been arrested for leaving the scene, Driver was administered three field sobriety tests, performed poorly on each test, and *agreed* to take a breath test which revealed an alcohol concentration of .13, all within the span of two hours from the time of Driver's involvement in the accident. " 'Our standard of review does not permit us to disregard uncontroverted evidence that supports Director's contention that all elements were proved.' " *Swanberg,* 122 S.W.3d at 91 (quoting *Hopkins–Barken v. Dir. of Revenue,* 55 S.W.3d 882, 885 (Mo.App.2001)). "The trial court must assess the facts 'by viewing the situation as it would have appeared to a prudent, cautious, and trained police officer.' " *Brown,* 85 S.W.3d at 4 (quoting *Cox,* 37 S.W.3d at 307). For the reasons previously related, we determine that Director made a *prime facie* case for license suspension under section 302.505, which was not rebutted by Driver. *Misener,* 13 S.W.3d at 668–9; *McNeill,* 716 S.W.2d at 915.