**Eric HAGER, Petitioner–Respondent,**

v.

**DIRECTOR OF REVENUE STATE of Missouri, Respondent–Appellant.**

No. SD 29073.

Missouri Court of Appeals,
Southern District,
Division One.

April 29, 2009.

Jeremiah W. (Jay) Nixon, Atty. Gen., Gary L. Gardner, Asst. Atty. Gen., Jefferson City, MO, for appellant.

Daniel T. Moore, Poplar Bluff, MO, for respondent.

JEFFREY W. BATES, Judge.

The Director of Revenue (the Director) revoked the driving privileges of Eric Hager (Hager) for one year after he refused to submit to a chemical test of his breath to determine his blood alcohol content. Hager filed a petition for review. Following a post-revocation hearing, the judge determined that the officer lacked probable cause to arrest Hager because "there was absolutely no evidence that [he] was the operator of the vehicle at the time of the wreck...." Accordingly, the court set aside the administrative revocation and reinstated Hager's driving privileges. The Director contends the court's decision resulted from a misapplication of the law. This Court agrees. The judgment is reversed, and the cause is remanded with directions to reinstate the Director's one-year revocation of Hager's driving privileges.

## I. Summary of the Relevant Statutory Framework

A person who operates a motor vehicle upon a public highway of this state is deemed to have consented to have his or her breath, blood, saliva or urine chemically tested to determine the individual's blood alcohol content after being arrested "for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated or drugged condition[.]" § 577.020.1(1).[1] If an arrestee refuses to take the chemical test, the officer is required to forward a sworn report to the Director. § 577.041.2. Upon receipt of the officer's report, the Director is required to revoke the individual's driving privileges for one year. § 577.041.3; *see Guhr v. Director of Revenue*, 228 S.W.3d 581, 583–84 (Mo. banc 2007).

---

1. All references to statutes are to RSMo Cum. Supp. (2007).

By filing a petition for review, the individual can obtain a post-revocation hearing in circuit court. § 577.041.4. There are only three issues to be decided at the hearing: "(1) whether or not the person was arrested or stopped; (2) whether the officer had reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition; and (3) whether or not the person refused to submit to the test." *Hinnah v. Director of Revenue,* 77 S.W.3d 616, 620 (Mo. banc 2002); § 577.041.4. "If the court determines any issue not to be in the affirmative, the court shall order the director to reinstate the license or permit to drive." § 577.041.5. The burden of proof rests on the Director, who must prove each element by a preponderance of the evidence. *White v. Director of Revenue,* 255 S.W.3d 571, 577 (Mo.App.2008). If the Director makes a *prima facie* case for revocation, however, the burden of producing evidence to rebut the Director's case shifts to the driver. *Hamor v. Director of Revenue,* 153 S.W.3d 869, 872 (Mo.App. 2004); *see Verdoorn v. Director of Revenue,* 119 S.W.3d 543, 545–46 (Mo. banc 2003).

## II. Standard of Review

This Court must affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or the trial court erroneously declared or applied the law. *Hinnah,* 77 S.W.3d at 620; *Laney v. Director of Revenue,* 144 S.W.3d 350, 352 (Mo.App.2004). "If the facts of a case are contested, then this Court defers to the trial court's determinations regarding those facts." *Guhr v. Director of Revenue,* 228 S.W.3d 581, 585 n. 3 (Mo. banc 2007).

If the facts are not contested, then the issue is legal and there is no finding of fact to which this Court must defer. *Id.* "This Court independently evaluates the declaration and application of the law by the trial court." *Owen v. Director of Revenue,* 256 S.W.3d 605, 608 (Mo.App.2008).

## III. Factual and Procedural Background

In September 2007, Hager was notified by the Department of Revenue that his driving privileges would be revoked for one year because he refused to submit to a chemical test of his blood alcohol content. He filed a petition for review pursuant to § 577.041.4.

In February 2008, a post-revocation hearing was held. The Director's case-in-chief consisted of Exhibit A, which was admitted in evidence without objection, and the testimony from Missouri State Highway Patrol Trooper Justin Watson (Trooper Watson). Hager did not testify, call any witnesses or present any other evidence. On appeal, Hager concedes there was sufficient evidence that he was arrested and that he refused the test. The only issue is whether Trooper Watson had reasonable grounds to believe Hager was driving a motor vehicle while in an intoxicated or drugged condition. The information contained in Exhibit A and Trooper Watson's testimony relevant to this issue is summarized below.[2]

The events that led to the revocation of Hager's driving privileges took place on Sunday, September 2 during the 2007 Labor Day weekend. That afternoon, Trooper Watson was dispatched to an accident on the exit ramp of northbound U.S. Highway 67 at Route PP in Butler County, Missouri. The trooper arrived at 4:40 p.m.

---

**2.** Exhibit A included the following certified records: Notice of Revocation/15 Day Driving Permit; Alcohol Influence Report; BAC Data-Master Evidence Ticket; Uniform Accident Report; Uniform Citation; and Report of Arrest.

He found a Dodge pick-up truck in the ditch at the top of the ramp. The truck had struck and damaged a 40–foot section of chain link fence. The cause of the accident appeared to be driver error. The vehicle was still hot, and it was towing a trailer with one all—terrain vehicle (ATV) on it. The officer checked the vehicle's registration and determined that Hager was the registered owner. Hager's wallet was sitting on the dashboard. According to Hager's driver's license, he was five feet, seven inches tall and only weighed 145 pounds.

There was a motorist (the first motorist) who had stopped on the shoulder of the road. The first motorist had seen a white male, small in stature and unclothed from the waist up, fleeing from the scene of the accident. Trooper Watson provided this description to Sergeant M.D. Tackett (Sgt. Tackett), who was assisting Trooper Watson with the investigation. Sgt. Tackett drove 100 yards to the bottom of the exit ramp, turned right and drove 200 yards to Fiddlers Fish House. Behind the restaurant, Sgt. Tackett found Hager. He was wearing only brown shorts and tennis shoes. Approximately two minutes had elapsed since Sgt. Tackett left the accident scene. He took Hager into custody and returned to the top of the exit ramp, where Trooper Watson was still investigating the accident. The time was 4.50 p.m. After observing that Hager matched the description given by the first motorist, Trooper Watson arrested Hager for leaving the scene of an accident.

Around that time, another motorist (the second motorist) stopped at the scene while Hager was present. The second motorist "asked if the driver of [the pick-up truck] had lost a second [ATV] on M Highway." That highway was about 10 miles away from the accident scene. Trooper Watson asked Hager "if he had one or two

[ATVs] on the trailer he was pulling." Hager replied, "Oh shit, there was a small 4–wheeler on there, too." He also stated that he had been at the Bricks 4x4 farm that day.

As Hager responded to questions, he was uncooperative, arrogant and used profanity. He had a "staggering odor" of intoxicants about his person that was "almost breathtaking." His speech was slurred, he was swaying and his eyes were bloodshot. Trooper Watson then administered three field sobriety tests: an alphabet test; a counting test; and the horizontal gaze nystagmus (HGN) test. Hager was able to recite the alphabet from A to Q. He was asked to count backwards from 75 to 51. He counted to 61, asked for the instructions to be repeated and completed the test. The HGN test showed that there was no smooth pursuit in either eye, and there was a distinct nystagmus in each eye at maximum deviation. The presence of four out of six possible positive signs indicated that Hager was intoxicated. Trooper Watson performed no other field sobriety tests on Hager because it was obvious that he was intoxicated. He was arrested for driving while intoxicated at 5:00 p.m. and transported to the Butler County Jail. On cross-examination, Trooper Watson admitted that: (1) he had not seen Hager driving the truck; (2) the officer did not know when the accident occurred; and (3) prior to the arrest, Hager had not said that he had been driving the truck.

After hearing the evidence, the trial court entered a judgment reinstating Hager's driving privileges. The court concluded that the Director did not prove Trooper Watson had probable cause for the arrest because "[the Director] failed to show any connection between the alleged intoxication of [Hager] and [his] operation of the vehicle and there was absolutely no evidence that [Hager] was the operator of the

vehicle at the time of the wreck...." There is no indication in the judgment that the trial court disbelieved any of the Director's evidence that was provided through Trooper Watson's testimony or Exhibit A. Instead, the court ruled that the Director failed to prove probable cause for the arrest. The court reached that conclusion because: (1) no one had personally observed Hager driving the truck; (2) Trooper Watson did not know exactly what time the accident had occurred; and (3) before the arrest, Hager had not explicitly admitted that he had been driving the truck. This appeal followed.

## IV. Discussion and Decision

■ The Director contends the trial court erred in reinstating Hager's driving privileges because the trial court's decision was based upon a misapplication of the law. This Court agrees.

■ Section 577.041.4 requires the Director to prove the arresting officer had "[r]easonable grounds to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition[.]" § 577.041.4(2)(a). " 'Reasonable grounds' is virtually synonymous with probable cause." *Hinnah v. Director of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002). "Probable cause exists when the facts and circumstances warrant a person of reasonable caution to believe that an offense has been or is being committed, based on the circumstances as they appear to a prudent, cautious and trained police officer." *Walker v. Director of Revenue*, 137 S.W.3d 444, 446 (Mo. banc 2004). Whether there is probable cause to arrest depends on the information in the officer's possession prior to the arrest. *Hinnah*, 77 S.W.3d at 621. "There is no precise test for determining whether probable cause exists; rather, it is based on the particular facts and circumstances of the individual case."

*Id.*; *Guhr v. Director of Revenue*, 228 S.W.3d 581, 584–85 (Mo. banc 2007).

The principal basis for the trial court's decision was that the Director failed to produce an eyewitness who actually saw Hager driving his truck. In so ruling, the court misapplied the law. The relevant inquiry before the court was not whether Hager was actually driving his truck, but only whether Trooper Watson had reasonable grounds to believe Hager was driving his truck in an intoxicated condition. As our Supreme Court explained in *Hinnah*:

It may seem absurd, as the court noted in *Kinsman v. Director of Revenue*, 58 S.W.3d 27 (Mo.App.2001), that the statute would not allow the licensee to contest the revocation simply on the grounds that the licensee was not driving. Absurd or not, that is what the statute says. The statute can be viewed simply as a very strong inducement to take the test or as a sanction for refusing the test. Under the plain words of the statute, the question is not whether the person arrested actually was driving but whether the officer who requested the test had reasonable grounds to believe that the licensee was driving while intoxicated. If the person consents, which is the goal of the statute, the statute is satisfied whether the person fails or passes. If the person fails the test, the state has evidence to use to prove intoxication in a criminal proceeding or license revocation. In either proceeding, the state must prove that the intoxicated licensee was driving. In contrast, under section 577.041, the licensee may not contest the revocation solely on the ground that he was not driving. Evidence that the licensee was not driving may be relevant to show the unreasonableness of the officer's belief that the licensee was driving while intoxicated. Beyond that, it is irrelevant.

To the extent that *Kinsman*, 58 S.W.3d at 31–32, holds that the director must prove actual driving, it is overruled.

*Hinnah*, 77 S.W.3d at 621–22 (footnotes omitted).

■■ It is not necessary for an officer to actually observe a person driving in order to have probable cause to arrest that person for driving while intoxicated. *McFall v. Director, Dept. of Revenue*, 162 S.W.3d 526, 531 (Mo.App.2005). An officer has a right to rely upon information communicated via police dispatch and information reported by citizen witnesses. *Id.* In addition, an arresting officer may establish probable cause that a person was driving from that person's admissions alone. *Id.* Proof of probable cause need only meet the preponderance of the evidence standard. *See Miller v. Director of Revenue*, 719 S.W.2d 787, 789 (Mo. banc 1986). This merely requires that the evidence, taken as a whole, is sufficient to show the fact to be proven is more likely than not. *Holt v. Director of Revenue*, 3 S.W.3d 427, 430 (Mo.App.1999); *see George v. McLuckie*, 227 S.W.3d 503, 507 (Mo.App.2007). The level of proof necessary to show probable cause for suspension or revocation of a driver's license is "substantially less" than that required to establish guilt beyond a reasonable doubt. *McFall*, 162 S.W.3d at 531; *see also Brown v. Director of Revenue*, 85 S.W.3d 1, 4 (Mo. banc 2002).

After reviewing the record, this Court concludes the Director proved by a preponderance of the evidence that, at the time of Hager's arrest, Trooper Watson had reasonable grounds to believe Hager had been driving a motor vehicle in an intoxicated condition. It was unnecessary for Trooper Watson to actually see Hager driving in order for probable cause to exist. *McFall*, 162 S.W.3d at 531. There was ample circumstantial evidence that Hager had been driving the truck. When Trooper Watson got there, he confirmed that Hager was the vehicle's registered owner. His wallet was sitting on the dashboard. The first motorist observed someone matching Hager's description flee from the accident scene. Within minutes, Hager was located about 300 yards away behind the Fiddlers Fish House. Flight and an attempt to escape indicates consciousness of guilt. *State v. Eoff*, 193 S.W.3d 366, 377 (Mo.App.2006). Trooper Watson saw no one else at the scene who could have been the driver, and there was nothing in the truck itself to indicate that anyone besides Hager had been inside it. Finally, Hager was present when the second motorist arrived. That motorist specifically asked if the driver of the pickup truck had lost one of his ATVs. Trooper Watson then asked Hager directly if he had one or two ATVs on the trailer he was pulling. Hager responded that there had been two. He also said that he (singular) had been at the Bricks 4x4 farm that day. He did not mention being accompanied by anyone else. This exchange amounted to an implicit admission that Hager had been driving the truck. *See Coday v. State*, 179 S.W.3d 343, 357 (Mo.App.2005) (holding that an accused acquiesces in the truth of an incriminating statement by failing to deny, contradict, or object to an accusatory statement made in his or her presence). A direct admission by Hager that he had been driving was not required.

It also was unnecessary for the Director to prove the exact time the accident occurred. *See McFall*, 162 S.W.3d at 532; *Cain v. Director of Revenue*, 896 S.W.2d 724, 726 (Mo.App.1995). When Trooper Watson arrived, the truck was still hot. The first motorist was still stopped at the accident scene. That person's description of the fleeing male resulted in Hager's apprehension minutes later. Additionally, the second motorist arrived about the time

Hager was returned to the accident scene. The second motorist reported that he had seen a lost ATV only ten miles away. All of these facts suggested that the collision between Hager's truck and the chain-link fence had occurred very recently.

The Director also proved by a preponderance of the evidence that Trooper Watson had reasonable grounds to believe that Hager had been driving while intoxicated. Prior to Hager's arrest, Trooper Watson observed that Hager's truck had run off the exit ramp and crashed into a chain-link fence. The cause appeared to be driver error. After personally observing Hager, Trooper Watson had reasonable grounds to believe that this error was the result of Hager's intoxicated condition. He was uncooperative, arrogant and profane when responding to questions. There was an intense odor of alcohol about his person. His speech was slurred, he was swaying and his eyes were bloodshot. He failed the HGN test, and he had to ask for the instructions on the counting test to be repeated before he could complete it. It was obvious to Trooper Watson that Hager was intoxicated. Moreover, there was nothing to indicate that Hager had consumed any alcohol after the accident. There was no alcohol in the truck. Hager was not found to be in possession of any alcohol when he was taken into custody. There was no evidence that he had been inside Fiddlers Fish House or any other establishment that could have served alcohol to him after he left the accident scene.

The evidence presented by the Director was sufficient to prove by a preponderance of the evidence that Trooper Watson had reasonable grounds to believe Hager was driving a motor vehicle while in an intoxicated condition. The trial court's contrary conclusion was based upon a misapplication of the law. Thus, the Director made a *prima facie* case for revocation, which Hager did not rebut. The Director's point is granted. The judgment is reversed, and the cause is remanded with directions to reinstate the one-year revocation of Hager's driving privileges.

BARNEY, J., and SCOTT, P.J., concur.