Mark Bradford **JONES**, Petitioner–Respondent,

v.

**DIRECTOR OF REVENUE, STATE of Missouri, Respondent–Appellant.**

No. SD 28989.

Missouri Court of Appeals,
Southern District,
Division Two.

July 10, 2009.

Jeremiah W. (Jay) Nixon, Attorney General, and Jennifer E. Gardner, Assistant Attorney General, Jefferson City, MO, for Respondent–Appellant.

John D. Beger, Rolla, MO, for Petitioner–Respondent.

1.  Unless otherwise indicated, all references to statutes are to RSMo 2000.

2.  Defense counsel and Trooper Creasey agreed that the following statement was a fair description of a rumble strip: "[T]he rumble

**DON E. BURRELL**, Presiding Judge.

The Director of Revenue (the "Director") revoked Mark Jones's driver's license for one year pursuant to section 577.041[1] after he refused to submit to chemical testing of his breath. Jones filed a petition for review with the circuit court, contending, *inter alia*, that the arresting officer lacked reasonable grounds to believe Jones was driving a motor vehicle while intoxicated. After a hearing, the trial court determined the arresting officer lacked "reasonable suspicion" to make his initial stop of Jones and ordered Jones's driving privileges reinstated on that basis. The Director now appeals that reinstatement. Because suppressing evidence in a civil license revocation proceeding based on a lack of reasonable suspicion to initially stop the vehicle is a misapplication of the law, we reverse and remand with directions to reinstate the Director's revocation.

## I.  Facts and Procedural Background

Missouri State Highway Patrol trooper Robert Creasey ("Trooper Creasey") was the only witness called by the Director. Trooper Creasey testified that he was traveling southbound on Highway 72 around 11 p.m. on a Friday night when he observed a red Dodge pick-up truck directly in front of him. He stated the truck was traveling between sixty-five and seventy miles per hour in a sixty miles per hour speed zone, that it was weaving within its own lane of traffic, and that "it crossed over the . . . right side of the road on one occasion . . . onto the white line onto the rumble strips.[2]" Trooper Creas-

strip is that series of indentations in the pavement that the D.O.T. now puts beside the road so that if somebody's getting off the road it will warn them."

ey could not recall how many times the truck weaved within its lane.

After making these observations, Trooper Creasey initiated a traffic stop and asked Jones for his driver's license and proof of insurance. Jones had to be asked twice for proof of insurance, but he did produce it. Trooper Creasey told Jones the reason he had stopped him was because he had driven onto the rumble strip. Trooper Creasey did not provide Jones with any other reason for the stop. Trooper Creasey observed that Jones's eyes were "bloodshot and glassy", that an odor of intoxicants was coming from inside his vehicle, and that when Jones spoke, "he just kind of stared." Because of these observations, Trooper Creasey asked Jones to exit his truck and sit in the passenger seat of Trooper Creasey's patrol car.

From his patrol car, Trooper Creasey radioed for a computer check of Jones's driving status. While waiting for a response to that inquiry, Jones stated: "I've had a couple of drinks but I'm okay." In response, Trooper Creasey asked Jones how many drinks he had consumed and Jones replied "four or five." Trooper Creasey then had Jones exit the patrol car and perform a series of field sobriety tests consisting of the horizontal gaze nystagmus, the one-leg stand, and the walk-and-turn. Jones failed all three. Trooper Creasey also asked Jones to recite the alphabet. Jones recited it correctly up to the letter L, but Trooper Creasey could not "understand the rest of the letters until he got to X, Y and Z." Trooper Creasey then had Jones blow into a portable breath tester ("PBT"). The PBT detected the presence of alcohol in Jones's breath.

From all of this, Trooper Creasey concluded Jones was intoxicated and placed him under arrest. He handcuffed Jones and transported him to the sheriff's department. In route to the sheriff's department, Jones stated: "I knew when you turned the lights on I wasn't going to pass." At the sheriff's department, Trooper Creasey informed Jones of the implied consent law [3] and asked him to consent to a chemical test of his breath. Jones refused to take the test. Trooper Creasey then continued to ask Jones standard questions from the alcohol influence report. When Creasey asked Jones what day of the week it was, Jones responded: "I might be drunker than I think."

After hearing evidence on Jones's petition for reinstatement, the trial court took the matter under advisement and asked the attorneys to submit trial briefs and proposed judgments. The court entered its formal judgment about forty days later. That judgment stated, in relevant part:

> On the evidence offered, adjudged and adduced, the Court finds Trooper Creasy [sic] of the Missouri State Hwy Patrol made a traffic stop of [Jones] on Highway 72 in Dent County at or near its intersection with Highway J;

> That the expressed reason for Trooper Creasy's [sic] stop of [Jones] was because [Jones's] motor vehicle had been "weaving within his lane" but he was unable to say how many times that had occurred and because the right tires of [Jones's] motor vehicle crossed the white fog line onto the "rumble strip" although no other cars on the road took evasive action to avoid [Jones's] car; [Jones's] car did not drive onto the paved shoulder and did not endanger anyone so that there was nothing to suggest [Jones] was driving erratically or in a dangerous manner.

---

**3.** Sections 577.020, 577.041.

Upon the evidence offered, adjudged and adduced the Court finds the expressed reason for the [t]rooper's stop of [Jones's] motor vehicle to be insufficient and the [o]fficer lacked reasonable suspicion therefor. *State v. Roark,* 229 S.W.3d 216 (Mo.App. W.D.2007).

## II. Standard of Review

We will affirm the trial court's judgment unless there is no substantial evidence to support it, its decision is contrary to the weight of the evidence, or the trial court erroneously declares or applies the law. *Hinnah v. Dir. of Revenue,* 77 S.W.3d 616, 620 (Mo. banc 2002).

## III. Discussion

The Director presents two points on appeal:

[I.] The trial court erred in sustaining Jones' hearsay and lack-of-foundation objections to the Director's Exhibit A because the exhibit is admissible under [section] 302.312, in that the exhibit contains copies of records properly certified by the appropriate custodian; [and]

. . . .

[II.] The trial court erred in holding that there was no probable cause to stop Jones, excluding all evidence gathered after the stop, and ordering the Director to reinstate Jones' driver's license, because in a driver's license revocation case under [section] 577.041, probable cause is not required for the stop, and the exclusionary rule does not apply. . . .

Because we find Point II dispositive, we need not address Point I.[4]

In Point II, the Director avers the trial court erroneously declared and applied the law in holding that there was no probable cause to stop Jones because section 577.041.4 does not require a finding of probable cause for the initial stop.

A person under arrest has a statutory right to refuse chemical analysis of his blood alcohol level. If the arresting officer has reasonable grounds to believe that the person was driving while intoxicated, the officer is to make a sworn report to the director of revenue that such person refused the requested test. " 'Reasonable grounds' is virtually synonymous with probable cause." *Hawkins v. Director of Revenue,* 7 S.W.3d 549, 551 (Mo.App.1999). The director will then revoke for a one-year period the license of the person refusing to take the test.

Upon request, a post-revocation hearing is available in the circuit court. The issues are limited to: (1) whether or not the person was arrested or stopped; (2) whether the officer had reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition; and (3) whether or not the person refused to submit to the test. *Section 577.041.4.* "If the court determines any issue not to be in the affirmative, the court shall order the director to reinstate the license or permit to drive." *Section*

4. Although Point I contends the trial court erred in sustaining Jones's hearsay and lack-of-foundation objections to the Department of Revenue's certified records ("Exhibit A"), it is unclear from the record whether Jones's objection to Exhibit A was actually sustained by the trial court. The exhibit was received by the court "subject to those objections." The trial court's judgment reinstating Jones's license does not mention what, if any, portions of Exhibit A were not taken into consideration in reaching its decision. If it had reached the merits of the Director's case, we assume the trial court would have followed the applicable law as set forth in section 302.312 that "[c]opies of documents from the department of revenue are admissible as evidence if the copies are properly certified." *Hunter v. Dir. of Revenue,* 75 S.W.3d 299, 303 (Mo.App. E.D.2002).

*577.041.5.* The director, thus, has the burden of proof at the hearing. *Rain v. Director of Revenue,* 46 S.W.3d 584, 587 (Mo.App.2001).

*Hinnah,* 77 S.W.3d at 619–20 (italics in original) (footnote omitted).

■ The Director is correct in his assertion that the trial court erroneously declared and applied the law. In its judgment, the court stated: "Upon the evidence offered, adjudged and adduced the Court finds the expressed reason for the [t]rooper's stop of [Jones's] motor vehicle to be insufficient and the [o]fficer lacked reasonable suspicion therefor." The trial court's reliance on whether Trooper Creasey had a reasonable suspicion for the initial stop is misplaced. *See Riche v. Dir. of Revenue,* 987 S.W.2d 331, 336 (Mo. banc 1999) (holding that the probable cause requirement for the initial stop and the exclusionary rule do not apply in section 302.505[5] proceedings); *Brown v. Dir. of Revenue,* 85 S.W.3d 1, 4 n. 4 (Mo. banc 2002) (discussing probable cause determinations in section 302.505 proceedings synonymously with reasonable grounds determinations in section 577.041 proceedings); *see also State v. Roark,* 229 S.W.3d 216, 220 n. 2 (Mo.App. W.D.2007) ("Probable cause is not a necessary predicate to an investigatory stop.") (citing *Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). As mentioned above, the trial court was limited to determining three issues: 1) whether Jones was arrested; 2) whether Trooper Creasey had reasonable grounds to believe Jones was driving while intoxicated; and 3) whether Jones refused to submit to the chemical breath test. Whether Trooper Creasey had a reasonable suspicion for a lawful stop is irrelevant in a civil driver's license revocation proceeding. *See Hinnah,* 77 S.W.3d at 622 n. 5 (noting that " '[o]nly' means only" as that term is used in section 577.041.4).

■ Jones did testify in his own defense, but his testimony was limited to addressing whether he had driven over the rumble strip and what Trooper Creasey had told him about why he was being pulled over. As a result, there was no evidence to controvert Trooper Creasey's testimony about the facts that gave him reasonable grounds to believe Jones had been driving while intoxicated. *See Little v. Vincent,* 248 S.W.3d 714, 718–19 (Mo. App. S.D.2008). Such evidence was more than sufficient to establish the second element set forth in section 577.041.4. Jones conceded the first and third elements— that he was arrested and that he refused to take the chemical breath test.

Because of its improper application of the exclusionary rule to this civil proceeding, the trial court erred by failing to consider all the evidence related to whether Jones was driving while intoxicated. We reverse the judgment reinstating Jones's license and remand the cause to the trial court which is hereby directed to enter a judgment reinstating the Director's revocation of Petitioner's driving privileges.

LYNCH, C.J. and RAHMEYER, J., Concur

---

5. Section 302.505.1, RSMo Cum.Supp.2001 provides, in relevant part: "The department shall suspend or revoke the license of any person upon its determination that the person was arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine was eight-hundredths of one percent or more by weight, based on the definition of alcohol concentration in section 302.500...."