Richard Louis PHILLIPS, Petitioner–
Respondent,

v.

DIRECTOR OF REVENUE,
Respondent–Appellant.

No. SD 31635.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 19, 2012.

Chris Koster, Attorney General, and Samuel E. Buffaloe, Special Assistant Attorney General, Jefferson City, MO, for Appellant.

Jason W. Johnson, Springfield, MO, for Respondent.

GARY W. LYNCH, P.J.

The Director of Revenue ("Director") appeals the trial court's order restoring the driving privileges of Richard Louis Phillips ("Petitioner") after Petitioner refused to submit to a chemical test of his breath, pursuant to section 577.041.4.[1] The Director contends that the trial court misapplied the law in finding that the arresting officer did not have reasonable grounds to believe Petitioner was driving while intoxicated because there was not probable cause supporting the initial traffic stop. We agree and reverse and remand with directions to reinstate Director's revocation.

### Factual and Procedural Background

On September 8, 2008, Officer Todd Vermillion of the Missouri Highway Patrol received a radio dispatch call regarding "a reported intoxicated driver leaving an area in Jasper County headed for Reeds Spring, Missouri." Dispatch relayed both a phone number and name for the reporting party and specified that there were three children riding in the vehicle; one of the children had purportedly called her mother to report that Petitioner was drinking and she was scared. Around 11:00 p.m. that evening, Officer Vermillion called the reporting party—Darla McGreevy, the mother of the children in the vehicle—to verify the information he had received from dispatch. McGreevy identified the driver of the vehicle as Petitioner and provided Officer Vermillion with Petitioner's birthdate, a description of the vehicle, and the vehicle's license-plate number. Just before midnight, Officer Vermillion located the vehicle in question heading southbound on Highway 13 at Branson West. Officer Vermillion followed the vehicle and observed the driver throw a cigarette out the window and cross the fog line. The vehicle turned onto Route DD, and Officer Vermillion continued to follow it until he found a safe area within which to conduct a traffic stop.

Officer Vermillion identified the driver as Petitioner using Petitioner's driver's license; it took Petitioner "a while to retrieve it from [his] wallet. He had difficulty manipulating his hands and removing the driver's license from the wallet." Petitioner also had difficulty locating proof of insurance; a passenger in the vehicle eventually helped him find it. There were three children riding in the vehicle with Petitioner. Upon speaking to Petitioner, Officer Vermillion noted "an odor of intoxicants on his breath. He had watery, bloodshot eyes, slurred speech and difficulty standing. He swayed while he was standing." When asked if he had been drinking, Petitioner initially stated that he had not been drinking but later admitted to drinking until about 6:00 a.m. that morning.

1. All references to section 577.041 are to RSMo Cum.Supp.2008.

Petitioner refused a preliminary breathalyzer test ("PBT") but did perform four field sobriety tests for Officer Vermillion: the horizontal gaze nystagmus ("HGN") test, the Romberg test, the walk-and-turn test, and the one-leg-stand test. Petitioner exhibited signs of all six indicators of intoxication on the HGN test. On the Romberg test—which entails standing with feet together, arms down, closing the eyes, and estimating the passage of thirty seconds—Petitioner allowed the passage of only twenty-five seconds, and he swayed and used his arms for balance. During the walk-and-turn test, Petitioner was unable to keep his balance while Officer Vermillion recited the instructions, used his arms for balance, turned incorrectly, and walked eight steps instead of nine. Finally, on the one-leg-stand test, Petitioner used his arms for balance and did not look at his foot as instructed. Throughout the duration of the field sobriety testing, Petitioner explained to Officer Vermillion that he had been at a wedding the night before and had been "drinking too much."

Based on his observations of Petitioner and Petitioner's performance on the field sobriety tests, Officer Vermillion formed the opinion that Petitioner was intoxicated and placed him under arrest. Petitioner initially resisted being handcuffed, but eventually acquiesced. Once Petitioner was handcuffed and seated in Officer Vermillion's patrol car, Officer Vermillion contacted the children inside Petitioner's vehicle to arrange for someone to transport them home. While speaking to the children, Officer Vermillion noticed an empty 30–pack of beer inside the vehicle. It was at this time that one of the children told Officer Vermillion that Petitioner had not been drinking that day.

Officer Vermillion transported Petitioner to the Stone County jail, where he explained to Petitioner the doctrine of implied consent; Petitioner asked to speak to his attorney, whose number was in his cell phone. Petitioner made several attempts to contact his attorney over the course of twenty minutes but was unable to do so. Thereafter, Petitioner refused to submit to a chemical test of his breath, and Officer Vermillion issued Petitioner citations for driving while intoxicated and not wearing his seatbelt. Petitioner's driver's license was subsequently revoked for a period of one year as a result of Petitioner's refusal to submit to a chemical test of his breath.

At Petitioner's hearing on his petition for reinstatement, Officer Vermillion was the only witness for Director. Petitioner testified on his own behalf, and his daughter—a passenger in the vehicle—also testified. Petitioner testified that he had been on the road approximately six hours when Officer Vermillion pulled him over and that he was "just exhausted." He stated that he had been "up all night" the previous night at a wedding; this contradicted his statement to Officer Vermillion during his interview at the Stone County jail, wherein Petitioner indicated that he had slept the entirety of the previous night. Petitioner also described a heated custody battle between himself and Darla McGreevy, the individual who had alerted law enforcement to Petitioner's potential intoxication. He noted "[p]robably a dozen times" when he believed McGreevy had called law enforcement attempting to have Petitioner "picked up[.]" Petitioner's daughter also described a tense relationship between her mother and father and stated that her mother had called police regarding Petitioner at least three times. She believed that her mother wanted "to give herself the benefit of the doubt in the other court case for custody[.]" Petitioner's daughter testified that she did not call her mother that evening and that she did not recall Petitioner drinking that day.

Following argument, the trial court found in favor of Petitioner and reinstated his driving privileges. In so ruling, the trial court stated,

> From the evidence, the Court does find that there was an arrest; the Court does find that there was a refusal. However, the Court finds that there was not probable cause for the traffic stop that led to the accumulation of the evidence or indications, at least, to the officer that there may have been impairment.

Shortly thereafter, on August 24, 2011, the trial court issued its written judgment, which stated,

> From the evidence the court finds that there was an arrest and that the test was refused. The court further finds the arresting officer's testimony to be truthful but insufficient to establish reasonable grounds to believe that Petitioner was driving a motor vehicle while in an intoxicated condition on the date in question.

This appeal followed.

### Standard of Review

■■■■ "In appeals from a court-tried civil case, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *White v. Dir. of Revenue,* 321 S.W.3d 298, 307–08 (Mo. banc 2010) (citing *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)).

In reviewing a particular issue that is contested, the nature of the appellate court's review is directed by whether the matter contested is a question of fact or law. *See City of St. Joseph v. Vill. of Country Club,* 163 S.W.3d 905, 907 (Mo. banc 2005) (questions of law are reviewed de novo); *Bd. of Educ. of City of St. Louis v. Mo. State Bd. of Educ.,* 271 S.W.3d 1, 7 (Mo. banc 2008) (when re-

viewing questions of fact, deference is given to the fact-finder). When the facts relevant to an issue are contested, the reviewing court defers to the trial court's assessment of the evidence. *York* [*v. Dir. of Revenue* ], 186 S.W.3d [267,] 272 [ (Mo. banc 2006) ].

*White,* 321 S.W.3d at 308. "When evidence is contested by disputing a fact in any manner, this Court defers to the trial court's determination of credibility"; this is " 'because [the trial court] is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record.' " *Id.* at 308–09 (quoting *Essex Contracting, Inc. v. Jefferson Cnty.,* 277 S.W.3d 647, 652 (Mo. banc 2009)). The "trial court is free to disbelieve any, all, or none of that evidence." *White,* 321 S.W.3d at 308.

### Discussion

■■■■ In the sole point relied on, Director contends that the trial court "erroneously declared and applied the law, in that even if the phone call prompting the stop was 'bogus,' the evidence believed by the trial court is sufficient to establish that the officer had reasonable grounds to believe [Petitioner] was driving while intoxicated." We agree.

The object and purpose of Missouri's implied consent law [section 577.020, RSMo Cum.Supp.2006] "is to rid the highways of drunk drivers." *Shine v. Director of Revenue,* 807 S.W.2d 160, 163 (Mo.App.1991). The implied consent law was adopted "to establish a fixed standard for procuring admissible evidence of blood alcohol for use against persons operating automobiles while intoxicated." *State v. Paul,* 437 S.W.2d 98, 103 (Mo.App.1969). The statute's central feature is that any person who

drives on the public highways is deemed to have consented to a chemical test to determine the alcohol or drug content of the person's blood.

*Hinnah v. Dir. of Revenue*, 77 S.W.3d 616, 619 (Mo. banc 2002). While "[a] person under arrest has a statutory right to refuse chemical analysis of his blood alcohol level[,]" his or her license will be revoked by Director for a period of one year if the arresting officer "has reasonable grounds to believe that the person was driving while intoxicated[.]" *Id.* at 619–20. For purposes of this statute, " '[r]easonable grounds' is virtually synonymous with probable cause." *Hawkins v. Dir. of Revenue*, 7 S.W.3d 549, 551 (Mo.App.1999).

Upon request, a post-revocation hearing is available in the circuit court. The issues are limited to: (1) whether or not the person was arrested or stopped; (2) whether the officer had reasonable grounds to believe that the person was driving while in an intoxicated or drugged condition; and (3) whether or not the person refused to submit to the test. *Section 577 041.4.* "If the court determines any issue not to be in the affirmative, the court shall order the director to reinstate the license or permit to drive." *Section 577.041.5.* The director, thus, has the burden of proof at the hearing. *Rain v. Director of Revenue*, 46 S.W.3d 584, 587 (Mo.App.2001).

*Hinnah*, 77 S.W.3d at 620.

▆▆▆ "Whether [the arresting officer] had a reasonable suspicion for a lawful stop is irrelevant in a civil driver's license revocation proceeding." *Jones v. Dir. of Revenue*, 291 S.W.3d 340, 344 (Mo.App. 2009); *see also Riche v. Dir. of Revenue*, 987 S.W.2d 331, 336 (Mo. banc 1999) (holding that the probable-cause requirement for the initial traffic stop and exclusionary rule do not apply to section 302.505 [2] proceedings); *Brown v. Dir. of Revenue*, 85 S.W.3d 1, 4 n. 4 (Mo. banc 2002) (equating probable-cause determinations in section 302.505 proceedings with reasonable-grounds determinations in section 577.041 proceedings). "[P]robable cause to arrest for an alcohol-related traffic violation which supports an administrative license suspension may be developed after the officer stops the motorist, regardless of whether the officer had probable cause for the stop." *Peters v. Dir. of Revenue*, 35 S.W.3d 891, 895 (Mo.App.2001), *see also iGelsheimer v. Dir. of Revenue*, 845 S.W.2d 107, 108 (Mo.App.1993) ("Section 577.041 does not require the arresting officer to have reasonable grounds before he makes the initial stop. It is sufficient if, after the stop, the arresting officer observes sufficient indicia of intoxication to reasonably believe the driver was driving a motor vehicle while intoxicated."). The trial court "must evaluate the evidence from the viewpoint of a cautious, trained, and prudent police officer at the scene at the time of the arrest." *Jones v. Dir. of Revenue*, 204 S.W.3d 709, 712 (Mo.App. 2006).[3]

**2.** All references to section 302.505 are to RSMo Cum.Supp.2001.

**3.** Quoting *White*, 321 S.W.3d at 309, Petitioner asserts that the requisite "level of probable cause will exist 'when a police officer observes **unusual or illegal operation of a motor vehicle** and observes *indica* [sic] of intoxication on coming into contact with the motorist.' " A review of relevant case law, however, reveals that this interpretation of probable cause is merely "[o]ne formulation" used by our courts to determine if an arrest was appropriate. *Oughton v. Dir. of Revenue*, 916 S.W.2d 462, 464 (Mo.App.1996); *see also Gordon v. Dir. of Revenue*, 896 S.W.2d 737, 740–41 (Mo.App.1995) (finding indicia of intoxication observed after a stop at a sobriety checkpoint sufficient to support probable cause for administrative revocation); *Gelsheimer*, 845 S.W.2d at 108.

The trial court's reliance on whether Officer Vermillion had probable cause for the initial traffic stop is thus misplaced. Rather, the trial court was limited to determining only three issues: (1) whether Petitioner was arrested; (2) whether Officer Vermillion had reasonable grounds to believe that Petitioner was driving while intoxicated; and (3) whether Petitioner refused to submit to the chemical test of his breath. The trial court expressly found that Petitioner had been arrested and that he had refused to submit to the chemical test of his breath, leaving only a determination of whether Officer Vermillion had reasonable grounds to believe that Petitioner was driving while intoxicated. The trial court also expressly found Officer Vermillion's testimony to be credible, and we must defer to that determination. *See White*, 321 S.W.3d at 308. Thus, Petitioner had slurred speech, watery and bloodshot eyes, and difficulty producing his driver's license and proof of insurance; he swayed while standing; he smelled strongly of alcohol; he failed all four field sobriety tests administered; and he repeatedly discussed "drinking too much" at some point before the stop. In addition, he refused to take a PBT. This evidence was more than sufficient to establish that Officer Vermillion had reasonable grounds to believe Petitioner was driving while intoxicated. *See Jones*, 291 S.W.3d at 344 (finding difficulty producing proof of insurance, bloodshot and glassy eyes, an odor of intoxicants, three failed field sobriety tests, and an admission of drinking at some point prior to the stop sufficient to satisfy reasonable-grounds requirement of section 577.041); *Findley v. Dir. of Revenue*, 204 S.W.3d 722, 727 (Mo.App.2006) (finding evidence supporting the existence of probable cause to arrest included testimony that the driver refused to submit to a pre-arrest PBT).

***Decision***

Because the trial court erroneously applied the law to exclude consideration of the evidence acquired by the arresting officer after the initial stop in determining whether that officer had reasonable grounds to believe that Petitioner was driving while intoxicated, we reverse the judgment reinstating Petitioner's driver's license and remand the cause to the trial court. The trial court is directed to enter a judgment reinstating Director's revocation of Petitioner's driving privileges.

NANCY STEFFEN RAHMEYER and WILLIAM W. FRANCIS, JR., JJ., concur.